SHUEY, EXECUTOR, *v.* UNITED STATES.

1. Where a "liberal reward" was offered for information leading to the apprehension of a fugitive from justice, and a specific sum for his apprehension, — *Held,* that a party giving the information which led to the arrest was entitled to the "liberal reward," but not to the specific sum, unless he, in fact, apprehended the fugitive, or the arrest was made by his agents.

2. Where the offer of a reward is made by public proclamation, it may, before rights have accrued under it, be withdrawn through the same channel in which it was made. No contract arises under such offer until its terms are complied with. The fact that the claimant of such reward was ignorant of its withdrawal is immaterial.

APPEAL from the Court of Claims.

Henry B. Ste. Marie filed his petition in the Court of Claims to recover the sum of $15,000, being the balance alleged to be due him of the reward of $25,000 offered by the Secretary of War, on the 20th of April, 1865, for the apprehension of John H. Surratt, one of Booth's alleged accomplices in the murder of President Lincoln.

The court below found the facts as follows: —

1. On the 20th April, 1865, the Secretary of War issued, and caused to be published in the public newspapers and otherwise, a proclamation, whereby he announced that there would be paid by the War Department "for the apprehension of John H. Surratt, one of Booth's accomplices," $25,000 reward, and also that "liberal rewards will be paid for any information that shall conduce to the arrest of either of the above-named criminals or their accomplices;" and such proclamation was not limited in terms to any specific period, and it was signed "Edwin M. Stanton, Secretary of War." On the 24th November, 1865, the President caused to be published his order revoking the reward offered for the arrest of John H. Surratt. 13 Stat. 778.

2. In April, 1866, John H. Surratt was a zouave in the military service of the Papal government, and the claimant was also a zouave in the same service. During that month he communicated to Mr. King, the American minister at Rome, the fact that he had discovered and identified Surratt, who had confessed to him his participation in the plot against the life of President Lincoln. The claimant also subsequently commu-

nicated further information to the same effect, and kept watch, at the request of the American minister, over Surratt. Thereupon certain diplomatic correspondence passed between the government of the United States and the Papal government relative to the arrest and extradition of Surratt; and on the 6th November, 1866, the Papal government, at the request of the United States, ordered the arrest of Surratt, and that he be brought to Rome, he then being at Veroli. Under this order of the Papal government, Surratt was arrested; but, at the moment of leaving prison at Veroli, he escaped from the guard having him in custody, and, crossing the frontier of the Papal territory, embarked at Naples, and escaped to Alexandria in Egypt. Immediately after his escape, and both before and after his embarkation at Naples, the American minister at ·Rome, being informed of the escape by the Papal government, took measures to trace and rearrest him, which was done in Alexandria. From that place he was subsequently conveyed by the American government to the United States; but the American minister, having previously procured the discharge of the claimant from the Papal military service, sent him forward to Alexandria to identify Surratt. At the time of the first interview between the claimant and the American minister, and at all subsequent times until the final capture of Surratt, they were ignorant of the fact that the reward offered by the Secretary of War for his arrest had been revoked by the President. The discovery and arrest of Surratt were due entirely to the disclosures made by the claimant to the American minister at Rome; but the arrest was not made by the claimant, either at Veroli, or subsequently at Alexandria.

3. There has been paid to the claimant by the defendants, under the act of 27th July, 1868 (15 Stat. 234, sect. 3), the sum of $10,000. Such payment was made by a draft on the treasury payable to the order of the claimant, which draft was by him duly indorsed.

The court found as a matter of law that the claimant's service, as set forth in the foregoing findings, did not constitute an arrest of Surratt within the meaning of the proclamation, but was merely the giving of information which conduced to the arrest. For such information the remuneration allowed to him

under the act of Congress was a full satisfaction, and discharges the defendants from all liability.

The petition was dismissed accordingly : whereupon an appeal was taken to this court.

Ste. Marie having died *pendente lite*, his executor was substituted in his stead.

*Mr. D. B. Meany* and *Mr. F. Carroll Brewster*, for the appellant, cited 14 Pet. 448; 15 id. 337; 18 How. 92; 2 Curt. 617; 1 How. 290; 7 Wall. 666; 1 Nott & H. 292; 4 S. & R. 241; 14 id. 267; 4 Watts, 317; 7 Casey, 263; 4 Barr, 353; 3 P. F. Smith, 207; 15 id. 269; 2 id. 484.

*Mr. Assistant Attorney-General Edwin B. Smith, contra.*

The offer of a reward, general or special, is a promise conditional upon the rendition of the proposed service *before the offer is revoked.*  Such an offer is revocable at any time before performance; and it is only by performance that it becomes a binding contract.  *Freeman* v. *Boston,* 5 Met. 57; *Loring* v. *Boston,* 7 id. 409; *Cummings* v. *Gann,* 52 Penn. St. 590; *Ryer* v. *Stockwell,* 14 Cal. 137; *Gilmore* v. *Lewis,* 12 Ohio, 285; *Crocker* v. *N. L. R.R. Co.,* 24 Conn. 261; *Janorin* v. *Exeter,* 48 N. H. 83; *Jones* v. *Phenix Bank,* 4 Seld. 228; *Fitch* v. *Snedaker,* 38 N. Y. 248.

This offer was revoked Nov. 24, 1865.  Ste. Marie had rendered no service to the United States : he, at least, had performed no condition of that promise before that date.  The revocation was as public, and certainly as authentic, as the original promulgation of the proclamation.

According to the terms of the original offer, Ste. Marie never did that which would have entitled him to $25,000, or any thing more than a " liberal reward," had there been no revocation.  The terms of such an offer are rightly prescribed by the person offering it, and must be strictly complied with by him who claims the reward.  *Jones* v. *Phenix Bank,* 4 Seld. 228; *Fitch* v. *Snedaker,* 38 N. Y. 248; *Clinton* v. *Young,* 11 Rich. (S. C.) 546.

His receipt of the $10,000 was in full of all equitable claim : legally, he had none.  *Marvin* v. *Treat,* 37 Conn. 96; *Sholes* v. *State,* 2 Chand. (Wis.) 182; *Calkins* v. *State,* 13 Wis. 389.

MR. JUSTICE STRONG delivered the opinion of the court.

We agree with the Court of Claims, that the service rendered by the plaintiff's testator was, not the apprehension of John H. Surratt, for which the War Department had offered a reward of $25,000, but giving information that conduced to the arrest. These are quite distinct things, though one may have been a consequence of the other. The proclamation of the Secretary of War treated them as different; and, while a reward of $25,000 was offered for the apprehension, the offer for information was only a "liberal reward." The findings of the Court of Claims also exhibit a clear distinction between making the arrest and giving the information that led to it. It is found as a fact, that the arrest was not made by the claimant, though the discovery and arrest were due entirely to the disclosures made by him. The plain meaning of this is, that Surratt's apprehension was a consequence of the disclosures made. But the consequence of a man's act are not his acts. Between the consequence and the disclosure that leads to it there may be, and in this case there were, intermediate agencies. Other persons than the claimant made the arrest, — persons who were not his agents, and who themselves were entitled to the proffered reward for his arrest, if any persons were. We think, therefore, that at most the claimant was entitled to the "liberal reward" promised for information conducing to the arrest; and that reward he has received.

But, if this were not so, the judgment given by the Court of Claims is correct.

The offer of a reward for the apprehension of Surratt was revoked on the twenty-fourth day of November, 1865; and notice of the revocation was published. It is not to be doubted that the offer was revocable at any time before it was accepted, and before any thing had been done in reliance upon it. There was no contract until its terms were complied with. Like any other offer of a contract, it might, therefore, be withdrawn before rights had accrued under it; and it was withdrawn through the same channel in which it was made. The same notoriety was given to the revocation that was given to the offer; and the findings of fact do not show that any information was given by the claimant, or that he did any thing to

entitle him to the reward offered, until five months after the offer had been withdrawn.  True, it is found that then, and at all times until the arrest was actually made, he was ignorant of the withdrawal; but that is an immaterial fact.  The offer of the reward not having been made to him directly, but by means of a published proclamation, he should have known that it could be revoked in the manner in which it was made.

*Judgment affirmed.*