## SMITH v. VERNON COUNTY, Appellant.

### Division One, May 24, 1905.

1. **REWARD: Apprehension: Power of County Court.** The county court has no authority to offer a reward for the apprehension and convicton of a person who has committed a crime. It can only offer a reward for his apprehension or arrest. But where it offers a reward for his arrest and conviction, it will be interpreted to mean what the statute means, to-wit, that the reward is for the accused person's arrest, to be paid when he is convicted.

2. ———: ———: **Compliance.** The county court published by placing upon its records this offer: "The county court of Vernon county, Missouri, hereby offers a reward of $100 for the apprehension and conviction of the murderer of A. D. Paxton, which occurred on July 3, 1901." Plaintiff who was a member of the police force of Council Bluffs, Iowa, discovered that the person afterwards convicted of the crime was fourteen miles in the country from that town, and on his own initiative and at his own hazard and without any warrant, went to the house where he was, arrested him, lodged him in jail, informed the

sheriff of Vernon county of the arrest, and on his arrival without requisition papers turned the prisoner over to him, and he returned with him to Missouri; at the trial he attended as a witness and furnished all facts within his knowledge. *Held*, that plaintiff complied with the terms of the offer.

3. ——: ——: ——: Accepting Witness Fees. The fact that the person who made the arrest claimed his witness fees when he attended the trial, does not affect his compliance with the terms of the reward, nor deprive him of his right thereto.

4. ——: ——: Policeman of Another State. A policeman of another State who in that State arrests a person for whose apprehension a county court in this State has offered a reward, is not deprived of his right to recover the reward by the fact of his official position. He was under no legal duty to this State to make the arrest, and he can receive no compensation from that State for it. His right to the reward is not to be defeated on the ground that a public officer can receive no extra-statutory compensation for the performance of a legal duty.

5. ——: ——: Arrest and Delivery Without Knowledge. Where the officer made the arrest before the reward was offered, and delivered him on the same day it was offered, but without knowledge thereof and reliance thereon, he cannot recover the reward. It is necessary for him to both allege and prove a knowledge of and a reliance upon the reward as the consideration for his services in making the arrest and delivering him to justice.

Appeal from Vernon Circuit Court.—*Hon. H. C. Timmonds*, Judge.

REVERSED AND REMANDED.

*A. J. King* for appellant.

(1) The demurrer to the evidence should have been sustained because there was no evidence offered tending to show that plaintiff complied with the conditions of the reward, and because it was affirmatively shown that the service rendered by plaintiff in making the arrest was rendered prior to the reward being offered by Vernon county. Sanderson v. Lane, 43 Mo. App. 158; Lovejoy v. Railroad, 53 Mo. App. 386; Sheery v. United States, 92 U. S. 77. (2) It is an

ancient principle of the common law, steadily adhered to, that a public officer ought not to take money for doing his duty. Therefore, a police officer cannot recover a reward for the arrest of an offender when it is his duty, as such officer, to make such arrest. Thornton v. Railroad, 42 Mo. App. 58; Kick v. Merry, 23 Mo. 72; Gillmore v. Lewis, 12 Ohio 281.

*Scott & Bowker* for respondent.

(1)  It is well-settled law that a public officer may accept a reward for acts or services which are not within the scope of his duties, such as arresting offenders for crimes that are committed in other States, and not within his jurisdiction. 24 Am. and Eng. Ency. Law (2 Ed.), 953; Russell v. Stewart, 44 Vt. 170; Gregg v. Pierce, 53 Barb. 387; Brown v. Godfrey, 33 Vt. 120; Morrell v. Quarles, 35 Ala. 544; Bronnenberg v. Coburn, 110 Ind. 169. (2)  Substantial performance of the offer of reward is sufficient; hence, an accomplishment of the result contemplated by the offer is held to be substantial performance of the service which constitutes the consideration for the promise of the reward. It is held that if the acts and services relied upon constitute the proximate cause of the result contemplated by the offer of reward, that is sufficient. 24 Am. and Eng. Ency. Law (2 Ed.), 956. (3)  Knowledge of the offer of the reward is not essential to recovery. 24 Am. and Eng. Ency. Law (2 Ed.), 957; Drummond v. United States, 35 Ct. Cl. 356; Williams v. Carwardine, 4 B. & Ad. 621; Neville v. Kelly, 12 C. B. N. S. 740; Eagle v. Smith, 4 Houst. (Del.) 293; Everman v. Hagman, 3 Ind. App. 459; Auditor v. Ballard, 15 Am. Rep. 728; Russell v. Stewart, 44 Ver. 170; Reif v. Paige, 55 Wis. 496.

LAMM, J.—This cause comes here by virtue of article 6 of the State Constitution as amended in 1884. [See sec. 5 of said amendment.]

Lying in small compass, few, simple and substantially agreed to, the record facts are as follows:

Smith on the 14th day of July, 1901, was a member of the police force of Council Bluffs, Iowa, and there is evidence indicating that he was also at the time engaged in the detective business along lines not covered by his official duties as such policeman. On the 3d day of July, 1901, A. D. Paxton was murdered in Vernon county, Missouri, by one Alva Johnson, who fled the country and became a fugitive from justice. At some time undisclosed by the record, but between said date and the 15th of July, the State of Missouri offered a reward for his capture. On the 15th day of July, 1901, appellant county through its county court offered a similar reward in the following terms:

"The county court of Vernon county, Missouri, hereby offers a reward of $100 for the apprehension and conviction of the murderer of A. D. Paxton, which occurred on July 3, 1901."

This offer was published by being spread on record. On the day before this offer, to-wit, on Sunday, the 14th day of July, Smith became aware of the receipt of a letter for Alva Johnson at the postoffice at Council Bluffs. The record is silent as to how he became aware of the fact that a murder had been committed in Vernon county, or that there was any ground for connecting Johnson with the commission of that crime. Johnson, it seems, had sent to the Council Bluffs postoffice by a messenger for his mail, and Smith learned of his whereabouts at a distant point in the county by the inquiries and disclosures of the messenger. Armed with this information, on his own initiative, he went fourteen miles into the country, found Johnson on a farm, took him into custody on suspicion (without a warrant so far as the record discloses) and caused him to be confined in the city jail at Council Bluffs and held pending inquiry. For some cause not disclosed, on

the afternoon of the next day, the 15th, he telephoned the sheriff of Vernon county, and through him was informed that Johnson was wanted and on what account. On hearing Johnson was in custody and acting alone on the strength of information derived from Smith and the arrest made by him, the said sheriff, on the night of July 15th, was induced thereby to go to Council Bluffs, and, on the next day or the one after that, identified Johnson, and thereupon Smith turned over his prisoner for the purpose of having him taken to Missouri and prosecuted for the Paxton murder. Thereat said sheriff brought Johnson to Vernon county, where, on the 19th of July, a warrant was procured to be issued and served upon Johnson. On the same day an information was filed in the Vernon Circuit Court charging Johnson with murder in the first degree. In the following October he was tried and convicted of a degree of manslaughter, on said information—Smith attending as a witness, testifying against him and claiming, and afterwards receiving, witness fees for his attendance—and this conviction remains unappealed from.

The record is silent as to the date Smith became aware that the county, as well as the State, had offered a reward. It is certain the Vernon county sheriff, though he knew of the State reward prior to his Iowa trip, did not know of the county reward until after his return to Vernon county with Johnson, and therefore could not have disclosed the latter fact to Smith when in Iowa, and there is nothing in the record showing that Smith knew of the reward in question until sometime after he turned over his prisoner. Smith claimed, and was paid, the State reward. The county court refused payment. On such refusal Smith sued and, on proof of facts above outlined, the court below gave judgment for him, the county appealing.

At the trial plaintiff asked the court to declare the law to be that on the facts proved he was entitled to

recover, and defendant asked the court to declare the law to be the converse. The court gave plaintiff's and refused defendant's instruction.

In this court appellant insists the cause should be reversed because: (1) The evidence failed to show that respondent had complied with the conditions of the reward offered by the county; (2) because plaintiff was a police officer at the time and was not entitled to a reward for the performance of his duty; and (3) because the apprehension of Johnson was prior to the offer, without a knowledge, and not made on the faith of the reward by the county. Of these in their order.

I. To be entitled to recovery, one claiming a reward for the return of lost or stolen goods, or the mere apprehension, or the apprehension and conviction of a criminal, or for information leading to either, must establish his substantial compliance with all the conditions of the offer of reward (Lovejoy v. Railroad, 53 Mo. App. 386, and cases cited; Shuey v. United States, 92 U. S. 73; Ralls County v. Stephens, 104 Mo. App. 115); but conceding the foregoing fundamental proposition, there would seem to be no merit in appellant's contention, for the reasons following: the statute authorizing a county court to offer and pay a reward reads as follows:

Sec. 2474, R. S. 1899: "Whenever the county court of any county in this State, or any two judges thereof in vacation, shall be satisfied that any felony has been committed in said county, such court or judges may, at their discretion, offer a standing reward of not exceeding five hundred dollars for the apprehension and arrest of the person or persons committing the same, which reward shall be paid out of the county treasury; but in no instance shall any reward, or any part thereof, be paid to any person who shall be entitled thereto until final conviction of the defendant."

Starting out with the assumptions (1) that the county court had no power to offer a reward for the

arrest and conviction of a felon except such as may be found in the statute (24 Am. and Eng. Ency. Law (2 Ed.), 944-5), and that (2) such county court had no power to go beyond and enlarge the terms of the statute in an offer of a reward for the arrest of one committing a felony, it will be seen that the statute is a warrant of authority to the county court to offer a certain kind of a reward, to-wit, a reward ''for the *apprehension* and *arrest* of the person or persons committing the same''—the word ''apprehension'' and the word ''arrest'' having been construed by this court in Cummings v. Clinton County, 181 Mo. 162, to be interchangeable terms—arrest meaning the same as apprehension. It will be seen, further, the statute does not contemplate that the party apprehending or arresting a felon had the duty resting on his shoulders of not only turning the criminal over to the law, but also of convicting him. The duty of conviction, after the felon is produced, is left by the statute where reason and law place it, in so far as a county reward is concerned, that is to say, upon the proper officers, in the proper court, and with the proper instrumentalities all under the wise safeguards of the law. [Thornton v. Railroad, 42 Mo. App. l. c. 64.] The ends of justice, however, are reached by the proviso in the statute to the effect that such reward shall not be paid out of the county treasury until after the final conviction. This proviso not only protects the State from imposition, but it compels the surrender of the prisoner after his apprehension, stimulates the interest of the reward-claimant in the prosecution, tends to secure his testimony as a witness if he possess any knowledge advantageous to the State, and, going beyond a bare arrest, it tends to produce the ultimate result aimed at, to-wit, a conviction.

When Vernon county offered a reward, as it did, ''for the apprehension *and conviction*'' of the murderer of A. D. Paxton, it is not fair to conclude that the word ''conviction'' used in the offer, was used in any other

sense or for any other purpose than that contemplated by the statute itself, and this results because, in the absence of controlling facts showing a contrary intent, the offer made by the court ought to be presumed to have been intended to be in strict compliance with the grant of power in the statute, and not otherwise. Construing the offer and the statute together and reading the statute into the offer, the offer means, in effect, that for the apprehension of the murderer of Paxton, the county court will pay $100, but not until after "final conviction of the defendant."

Did respondent comply with the terms of such offer, excluding for the moment his acting on the faith thereof? We think he did. It is undisputed that he apprehended the murderer unaided, on his own initiative, at his own expense and hazard, and put him in the hands of justice. It is undisputed that he took proper interest in the prosecution, that he attended the trial in a distant State, where he was under no legal obligation to go and where his attendance could not be obtained by compulsory process, that he contributed to the conviction by furnishing all the facts within his knowledge as a witness, and that a final conviction resulted.

The contention of appellant that Smith was paid his witness fees is of no significance. Whether these fees amounted to his outlay, we know not, nor does it matter. There is no provision of law to the effect that a reward-claimant may not, nor does it at first blush seem *contra bonos mores* that he may claim and be paid witness fees without thereby militating against his right to an offered reward. The statute offers his fees, the statute likewise provides for the reward, both offers spring from the same source, are of equal dignity, are not inconsistent, and why should they not be simultaneously operative?

There is a class of cases where rewards are offered by private individuals for the conviction of crim-

inals in which courts have laid stress upon the failure of the reward-claimant to take active steps to procure a conviction—in some instances by not employing counsel to prosecute, by not swearing out a warrant, by lying by and not assuming the necessary burdens of a prosecution, etc.—but such cases, of which Lovejoy v. Railroad, 53 Mo. App. supra, is a sample, do not lay down a doctrine that ought to be applied with rigor to a case like the one at bar, where the right to offer a reward is bottomed on a statute and where the terms actually offered can be harmonized with the terms set forth in the statute and which statute lays no duty upon the reward-claimant to prosecute or convict other than his implied duty of aiding in a reasonable way by frank disclosures of all facts, and as a witness at the beck and call of the State.

It results from these views that appellant's first contention, to-wit, that respondent did not comply with the terms of the offer of reward, must be disallowed.

II.   Does respondent's official position defeat recovery?  At common law it was uniformly held that a promise to pay an extra-statutory compensation to a public officer for the performance of his legal duty could not be enforced.  Such contract was void as against public policy.  Some adjudications put it this way: actions founded on promises for extra-statutory compensations are scandalous and shameful, and officers on whom the law casts a duty to ferret out crime, hunt down the offenders and  bring them to  public justice, must be content with legal fees—seasoned, possibly, by a dash of sentimental satisfaction arising from the contemplation of the fact that they have done the State some service; by other courts such contracts have been put on the foot of oppression and extortion.  Serjeant Hawkins, in his Pleas of the Crown (1 Hawkins' P. C., chap. 68, sec. 4), states his views as follows:

"Also it having been found by experience, that generally it is vain to expect that any officers who de-

pend upon a known fixed salary, without having any immediate benefit from any particular instances of their duty, should be so ready in undertaking, or diligent in executing them, as they would be, if they were to have a present advantage from them; it hath been thought expedient to permit them to take certain fees in many cases, but it is certain that they are guilty of extortion, if they take anything more. Also it hath been resolved, that a promise to pay them money for the doing of a thing which the law will not suffer them to take anything for, is merely void, however freely and voluntarily it may appear to have been made; for if once it should be allowed, that such promises could maintain an action, the people would quickly be given to understand how kindly they would be taken, and happy would that man be who could have his business well done without them.''

The reasons thus aptly put by Hawkins are soothing to the legal mind, have been adopted by standard text-writers, and commanded an indorsement from the strong pen of Judge SCOTT (Kick v. Merry, 23 Mo. 72), and the rule itself, to promote health in the body politic, ought to be sustained in undiminished vigor. Nevertheless, in applying it, discrimination should be used to fit it only to a case within the common sense of the thing and where the benefit will be advanced and the mischief retarded. The mischief struck at is obvious; and a public officer, under a bounden oath to perform a certain official duty, for the performance of which a legal fee or salary is provided by law, is the character of person within the spirit and letter of the rule.

In this case, not only does the evidence indicate that Smith was carrying on the business of a detective on his own hook, as well as performing the duties of policeman of Council Bluffs, but even if the service performed by him be referred solely to his character as a policeman, what present, legal duty devolved upon him as a municipal officer of Council Bluffs to ferret

out and hunt down an escaped Missouri murderer, hid in the obscurity of the country miles distant from that town? Appellant's counsel has pointed out no such duty and there is none within our ken. To the contrary, the performance of that service may well be placed ·without the duty prescribed by law for a domestic policeman (though that question is not in this case), let alone one of a foreign jurisdiction. [Bronnenberg v. Coburn, 110 Ind. 1. c. 174.]

What pay in legal fees is vouchsafed by the statutes of Iowa or the ordinances. of Council Bluffs for the performance of such extraordinary service as Smith rendered under this record? None is contended for. Those services were prompt, intelligent and so peculiar as to bespeak recognition and bounty, if an award of bounty can be made without doing violence to recognized legal principles; for instance, without a warrant, on mere suspicion, Johnson was arrested and held in custody and, without requisition papers, through the aid of Smith he was brought from Iowa to this State. There was a hazard here, had the suspicion been unfounded or the result fallen short of a conviction, for vexatious suits, and we cannot conceive how this personal hazard in the arrest and the expenses incurred in and about this service arose as his due to the commonwealth of Missouri, or how they came within the mandate of his official oath, or within the solatium of his official ·salary or the fees provided by his master, the State of Iowa and the municipality of Council Bluffs.

So that, not coming within the reason of the rule, we are unwilling to hold that the mere fact of his being a policeman in a foreign jurisdiction, should deny him the right to claim the reward in question. While there are cases out of line with these views, yet our holding is believed to be sustained by the greater weight of the well-reasoned-out cases. [Cornwell v. Railroad, 100 Mo. App. 258; 24 Am. and Eng. Ency.. Law (2 Ed.), 953, and cases cited.] And by the books

generally. [Throop's Public Officers, chap. 20; Wood's Master and Servant (2 Ed.), sec. 170.]

III. This brings us to the consideration of the last and the most serious question in the case, viz., the offer of a reward by Vernon county was made the day after the apprehension of Johnson, was made without the knowledge by respondent of, and, so far as shown by the record, without reliance on the reward sued for. On such state of facts appellant bases the insistence that there can be no recovery.

The cases are in hopeless conflict on this question. On the one side is a line holding to the theory that knowledge of the offer of a reward is not necessary. The reasoning of this line of cases is felicitously expressed in Auditor v. Ballard, 72 Ky. 572, thus: "But it is said that the appellee is not entitled to the reward because he did not know at the time he arrested the fugitive and delivered him to the jailer that one had been offered, and therefore the services could not have been performed in consideration of the reward. If the offer was made in good faith, why should the State inquire whether appellee knew that it had been made? Would the benefit to the State be diminished by a discovery of the fact that the appellee, instead of acting from mercenary motives, had been actuated solely by a desire to prevent the escape of fugitive and to bring a felon to trial? And is it not well that all may know that whoever in the community has it in his power to prevent the final escape of a fugitive from justice, and does prevent it, not only performs a virtuous service, but will entitle himself to such reward as may be offered therefor?" To the same effect are Dawkins v. Sappington, 26 Ind. 199; Eagle v. Smith, 4 Houston (Del.) 293; Drummond v. United States, 35 Ct. Cl. 356; Russell v. Stewart, 44 Vt. 170. This is also the doctrine of the English courts. [Williams v. Carwardine, 4 Barn. and Ad. 621; Neville v. Kelly, 104 E. C. L. 740.]

On the other hand is a line of cases holding that

knowledge of the offer and a resulting reliance upon it in performing services are essential elements in the recovery of a reward. This line of cases is based on the theory, everywhere recognized, that an offer of a reward is the same as any other contractual offer and must be known and accepted by being acted upon. If the promise of a reward is to be brought, as seems sensible, within the classification of a contract, it is impossible to see how any other conclusion can be logically arrived at; for in every contract there must be an *aggregatio mentium,* and how can a meeting of minds exist without the acceptance of an offer express or implied or arising, at least, from some fiction of law? . That the absence of knowledge of the offer and the absence of performance of services on the faith of the offer, are barriers to recovery is reasoned out on principle by a philosophical writer, Dr. Wharton (1 Whar. on Con., p. 50, et seq.) ; by Story (1 Story on Con. (5 Ed.), sec. 493), and other authors, and is the doctrine of many courts of last resort (Williams v. Railroad, 191 Ill. 610; Howland v. Lounds, 51 N. Y. 607; Stamper v. Temple, 6 Humph. 113; Abel v. Pembroke, 61 N. H. 357; Wilson v. Stump, 103 Cal. 255; Hewitt v. Anderson, 56 Cal. 476), and is within the rationale of other cases, where the point was not directly involved.

The question in this State is somewhat open, but the *dicta* of our courts show the trend of the Missouri judicial mind to be towards the latter view. For example, in Cummings v. Clinton County, 181 Mo. 1. c. 167, BURGESS, J., comments on plaintiff's knowledge of the offer of the reward and his performance of service upon the faith of the offer.

Ralls County v. Stephens, 104 Mo. App. 115, was a case in which the reward was paid into court and the contest was between rival claimants, Stephens, Carter and Testerman, interpleaders. The reward being adjudged to Stephens, Testerman acquiesced and Carter

appealed. While the controversy between Stephens and Carter rode off on the theory that, although Carter arrested the fugitive, he did so as the agent of Stephens, yet, *arguendo,* the court commented on Stephens's knowledge of the offer and on the fact that the services and Carter rode off on the theory that, although Carter was ignorant of the offer. This case amounts to an adjudication that as between two persons claiming a reward, the one who knew of the offer, performed services on the faith of it and procured the other to make the arrest, had a better title to the reward than the one who actually made the arrest, not knowing or relying on the reward.

In Sanderson v. Lane, 43 Mo. App. 158, S. bought a stolen horse; L., a city marshal, knowing of a reward, went to the house of S. in his absence, informed the brother of S. that the horse was stolen, pointed it out and said that he had come for it, paid $4 for the keeping of the horse, took it away, delivered it to the owner and received the reward. Neither S. nor his brother knew of the offer of reward. S. sued L. for the reward, recovered below and L. appealed. The judgment was reversed upon the ground that plaintiff neither knew of the reward, nor did he return the horse.

It would serve no useful purpose to seek to disturb the reasoning of the foregoing cases, which seem to be in line with the better American doctrine, although if the question was entirely *res integra* we might be inclined to adopt the persuasive reasoning of Auditor v. Ballard, supra.

We lay no stress upon the mere fact that respondent made the arrest before the reward was offered, and this is so because it appears from the record that the prisoner was not delivered over until after the 15th of July, the date of the offer of the county reward. The State of Missouri was interested in a result and not in a bare arrest. The delivery of the prisoner was a necessary step for respondent to take before his services,

which commenced with the arrest, were so far consummated that the result aimed at, to-wit, a conviction, could be attained; in other words, the bare arrest was prior to the offer but was consummated by a delivery after the offer. This might be well enough, were it not for the trouble arising from the fact that even when the delivery of the prisoner to the officer occurred, respondent, so far as this record speaks, was in ignorance of the offer of a county reward and did not perform that portion of his services in reliance on such offer, nor is there any averment of the petition directed to such fact.

It has not escaped us that respondent contends he "asked an officer of Vernon county at the time he performed the service, about the reward, showing clearly an intention to claim the reward if there was any for the services he performed." Nor has it escaped us that respondent further contends "the agent of the county misinformed him in regard to the reward." These contentions of respondent find no support in the testimony, and, since he was not called upon to testify, they may be an echo of facts existing *dehors* the record and which may be supplied at a retrial.

The petition is defective in not averring a knowledge of and a reliance upon the reward as a consideration for the services of respondent. The proof is wanting upon this essential element in the case. It is possible that on an amended petition and at a retrial the deficiency may be supplied.

The cause is accordingly reversed and remanded with leave to respondent to amend his petition, if he see fit, and then to be proceeded with in accordance with the views of this court on the law, without either party being precluded on the facts.

All concur.