JOSEPH HOGGARD, THOMAS HOGGARD and C. E. MURPHY, Respondents, v. R. P. DICKERSON, Appellant.

**Springfield Court of Appeals, May 12, 1914.**

1. **REWARD: For Capture of a Person: How Understood.** An offer to pay a reward for a man or for his capture should be taken as meaning for his capture in a lawful manner.

2. ———: **For Capture of Murderer: How Construed: Evidence.** In an action to recover an amount offered as a reward for the capture of the murderer of the defendant's friend, evidence reviewed and considered sufficient to warrant the jury in finding that the reward offered was not conditioned on the murderer's being brought in dead.

3. ———: **For Commission of Crime: Invalid.** A reward for the apprehension of a murderer conditioned on his being brought in dead, is the offer of a reward which would require the person earning it to commit a crime and hence would be invalid.

4. ———: **Contracts of: Rules Governing: Construction.** The construction of contracts of reward is governed by the same rules applicable to contracts in general and a contract of reward should be given a reasonable construction and one that tends to make it valid rather than destroy it.

5. ———: **Nature of Contract: Parties to.** An offer of reward is in the nature of a contract with any one and every one undertaking to comply with its terms.

6. ———: **Knowledge of Reward: Performance Before Knowledge: Part Performance After.** While a person cannot claim a reward where the services were performed without the knowledge of the reward being offered or where he had no intention of claiming the reward, yet a performance begun without any knowledge of the reward being offered, when completed after such knowledge, entitles the party to the reward.

7. ———: **For Capture or Arrest: Safe Delivery Implied.** A reward for the arrest or capture of a fugitive implies a safe delivery to the proper person or place for holding him until trial.

8. ———: **Defense of Payment: Instructions.** In an action for the recovery of a reward offered for the apprehension of a murderer, where the defense was payment and settlement thereof, an instruction that to sustain such defense the jury must find that the amount received was accepted by plaintiffs in full settlement of all rewards was not open to the objection that it required the jury to find that the plaintiffs received the amount as settlement for all rewards that might be offered by others as well as by defendant.

9. **INSTRUCTIONS: Cautionary Instructions: Discretion of Court.** The giving or refusing of cautionary instructions is, as a rule, discretionary with the court, especially where the court has given a general instruction as to the credibility of witnesses, including their means of knowledge and apparent intention to testify truthfully.

10. ———: **Revocation: Defense of: Must be Pleaded.** That a reward has been revoked before it was acted upon so as to avoid liability thereunder, is a matter of defense and must be pleaded.

11. ———: **Revocation: Intention Must be Shown.** In order that an offer of a different reward at a later time and different place shall have the effect of a recall or revocation of a reward previously made it must be shown that such later offer was really intended as a recall or revocation of the former one.

Appeal from Greene County Circuit Court.—*Hon. Alfred Page*, Judge.

AFFIRMED.

*Patterson & Patterson* for appellant.

(1) The petition is defective in not averring a knowledge of and a reliance upon the reward as a consideration for the services of respondent. Smith v.

Vernon County, 188 Mo. 515. (2) The court erred in giving plaintiff's instruction numbered 1 and refusing defendant's instruction numbered 10. Jenkins v. Clopton, 141 Mo. App. 74; Miller v. Mo. & Kan. Tel. Co., 141 Mo. App. 462; Mead v. Brotherton, 30 Mo. 201; Greer v. Parker, 85 Mo. 107. (3) Instruction No. 2 given for plaintiff is erroneous because it tells the jury that under the law the defendant could not make a settlement of plaintiffs' possible claim against him without making a settlement of all claims for a reward for the capture of the slayer of Stanley Ketchel, and furthermore in that same immediate connection charges the jury that the defendant could not make a settlement with plaintiffs unless plaintiffs fully understood that in receiving said $15 they were settling in full and did not expect any other or further payment on such account. (4) Cautionary instruction numbered 7, for defendant should have been given. Worley v. Dryden, 57 Mo. 233. (5) One cannot recover a reward where his acts were performed with knowledge of the offer, but without any intention to claim it. 34 Cyc., 1752; Hewett v. Anderson, 56 Cal. 476; 38 Am. Rep. 65; Able v. Pembroke, 61 N. H. 357; Smith v. Vernon County, 188 Mo. 513. (6) The offer to pay a reward may be revoked at any time before its acceptance by performance, since an unaccepted offer creates no contractual rights. 34 Cyc. 1737; Biggars v. Owen, 79 Ga. 658, 5 S. E. 193; Mitchell v. Abbott, 86 Me. 338, 41 Am. St. 559; Janverin v. Exeter, 48 N. H. 83, 2 Am. 185; Shuey v. U. S., 92 U. S. 73.

*Dickey & Dickey* and *J. T. White,* for respondents.

(1) The petition does allege directly and positively that plaintiffs had knowledge of the offered reward and acted upon it. It is a necessary inference that they relied upon it or they would not have acted upon it. Even if that averment were essential, the

want of it is cured by the verdict. State ex rel. Rife v. Reynolds, 137 Mo. App. 261; Thomason v. Ins. Co., 114 Mo. App. 109; Wiercarver v. Insurance Co., 137 Mo. App. 247; Wiler v. Ratican, 150 Mo. App. 475; R. S. 1909, Secs. 1850 and 2119. (2) The court did not err in refusing defendant's instruction numbered 10. It is covered essentially by defendant's instruction numbered 2. Instruction numbered 1 for plaintiff covers all that number 2, for defendant, covers and is the converse of it. Asbill v. City of Joplin, 140 Mo. App. 262; Shaller v. Friedman Bros. Shoe Co., 130 Mo. App. 727; Johnson v. Traction Co., 161 S. W. 1193. (3) Instruction number 2, given for plaintiff, was proper. Defendant offered to show that he settled with plaintiffs by giving a check for $15. The court of its own motion gave instruction number 1, in which the jury are instruction to find for defendant if the settlement was so made. The instruction complained of was proper to direct the attention of the jury to the essential elements of a contract of that kind, that plaintiffs understood it was a settlement as well as defendant. Goodrich v. Stanley, 24 Conn. 613. (4) Cautionary instructions of the character of defendant's instruction number 7 are always given or refused at the discretion of the trial court. Appellate courts will not reverse a case for failure to grant instructions directing the jury to receive verbal statements with caution. Webb v. Baldwin, 165 Mo. App. 640, 147 S. W. 849; State v. Clump, 16 Mo. 385; Beasly v. Jefferson Bank, 114 Mo. App. 406; State v. Hicker, 95 Mo. 322; McCormick v. City of Monroe, 64 Mo. App. 197. (5) It is not necessary, in order to recover a reward of this character, that the party claiming it should have knowledge of the offer at the time of making the arrest. It is entirely sufficient if he learns of it before he delivers the prisoner into custody. Smith v. Vernon County, 188 Mo. 501; Coffey v. Commonwealth, 37 S. W. 875; 34 Cyc. Law & Pro., 1742. (6) Revocation of

the reward was not pleaded which is necessary to establish that defense. Roberts v. Fuller Construction Co., 115 Mo. App. 456. (7) A party is restricted on appeal to the theory adopted at the trial. Manzke v. Goldenberg, 149 Mo. App. 12; Bank v. Zook, 133 Mo. App. 603; Hume v. Hale, 146 Mo. App. 659.

STURGIS, J.—The jury in this case by its verdict held the defendant liable to plaintiffs for the payment of a reward of $5000, alleged to have been offered by defendant to the public for the capture of the slayer of Stanley Ketchel, who was shot and robbed on October 15, 1910, at a farm owned by defendant in Webster county, Missouri, known as the Dickerson ranch. There was little or no doubt at the time that one Walter Dipley, then living on such ranch, was the guilty party and the reward offered was practically, if not in terms, applicable to him. The friendship existing between defendant and the slain man was very close and Ketchel was at the time of his being shot a guest of defendant at his ranch. Ketchel was well known as the middleweight champion pugilist and the defendant is a prominent business man of Springfield, Missouri. The shooting of Ketchel occurred in the morning and Dipley, who did the shooting, at once fled, heavily armed. On defendant being informed of it, he at once chartered a special train at Springfield, took with him a man with bloodhounds, gathered all the officers within reach, and with some of his close friends went to Conway, the nearest railroad point to the scene of the killing. He was evidently very much wrought up and showed a determination to have the guilty man captured and punished. Efforts were made at the ranch to track the escaped murderer but without avail. The defendant, with his friends, officers, etc., took the slain man back to the special train at Conway in the afternoon and from there to Springfield.

It is claimed that the defendant, both publicly and privately, offered a reward of $5000 to any one who would capture the person who shot Ketchel, both while at the farm and at Conway just before the special train departed on its return to Springfield. While defendant, by his answer, denies the allegations of the petition generally, his evidence shows and he admitted that he did offer a reward for the body of the person who shot his friend Ketchel but that his offer was "for him dead, not one cent for him alive." The defendant also sets up the defense of a settlement between plaintiffs and himself, whereby the plaintiffs accepted $15 in full settlement of their claim. There were a large number of witnesses examined on both sides, the battle being waged for the most part as to whether defendant offered a reward for Dipley dead or for him dead or alive. It was admitted on the trial that Dipley was tried and convicted of the murder of Ketchel and sentenced to the penitentiary for life. It was also shown, without contradiction, that plaintiffs, who were farmers in Webster county, captured Dipley the next morning after the commission of the crime and delivered him to the sheriff and jail of that county. We will speak more of the manner of the arrest in connection with the plaintiffs' knowledge of and reliance on the reward in making it.

A careful analysis of all the evidence is well calculated to convince a jury, as it doubtless did, that while defendant's preference was, in his anger, excitement and intense feeling against the murderer of his friend, to have the guilty party killed rather than captured and brought to trial, yet, that he did offer a reward for his capture regardless of his being brought in dead or alive. The evidence shows that he began talking this offer of reward even before reaching the scene of the killing; he stated it several times at the farm to different men or groups of men; he stated it two or three times on the return to Conway

before the train left for Springfield. It is doubtless true that he did not always state it in the same terms, though there is no variation as to the amount. He evidently gave way, especially in talking to individuals who were his friends, to his desire for revenge in stating his offer of reward and told them to bring him in dead, or that he was armed and dangerous and to shoot him down and take no chances, or to shoot him first and cry halt afterward, and other such expressions, showing a desire to have him killed rather than captured. There is abundant evidence to show, however, that to other persons and especially when making the offer publicly, as he did from the car door at Conway, he stated the reward would be given for him dead or alive, or simply for his capture. In finding for the plaintiffs the jury may not have discredited the witnesses who testified to his making the statement that he desired to have him killed, nor even as to his saying on one or two occasions that he only wanted him dead and would not pay one cent for him alive. The evidence shows that on the return of defendant and his party from the ranch to Conway, and just prior to the special train leaving for Springfield, the defendant from the car door made a public proclamation of his offer of reward, repeating it two or three times, to a hundred or more persons gathered there. While the witnesses do not all state the offer made on this occasion in the same words, yet, the preponderance, as to numbers, is in favor of plaintiffs that he did not then annex to the offer of $5000 for the slayer of Ketchel that he be killed or brought in dead. The defendant claims that there were only four witnesses who testified that the reward was offered for him dead or alive, while plaintiffs claim that seventeen witnesses so testified. The difference is in the fact that the defendant counts only those who testified that he used the words "dead or alive," while plaintiffs count those who testified that he stated that he would pay the reward for

the slayer of Ketchel but without specifically using the words "dead or alive." We think that an offer to pay a reward for a man or for his capture should be taken as meaning for his capture in a lawful manner. We, however, do not weigh the evidence and even four witnesses are sufficient to give some substantial evidence on which to base a verdict.

The jury found for plaintiffs on an instruction requiring them to find that defendant "offered a reward of $5000 for the person who shot Stanley Ketchel." They found against defendant on his instruction that if they found that he only offered "a reward of $5000 to the person or persons who killed the slayer of Stanley Ketchel, then the plaintiffs cannot recover." These instructions placed this issue before the jury in the most favorable light for defendant. It doubtless had some weight with the jury that defendant was asking a construction to be placed on his offer of reward which would require of the person earning it the commission of a crime. No valid offer of reward involving the commission of a crime could be made and the jury was doubtless inclined to put a construction on this offer which would make it a valid and *bona fide* offer, consistent with enforcement of the law, rather than one looking to the commission of a further crime and therefore incapable of enforcement against the person taking the offer. An offer of reward is in the nature of a contract with any and every person undertaking to comply with its terms. [34 Cyc. 1730; Elkins v. Board of County Comrs., 86 Kan. 305, 120 Pac. 542, 46 L. R. A. (N. S.) 662.] The construction of contracts of reward is governed by the same rules applicable to contracts in general, 34 Cyc. 1741, and it is a familiar rule of law that a contract should be given a reasonable construction and one that tends to make it valid rather than destroy it altogether. [9 Cyc. 586, 587; Wiggins Ferry Co. v. Railroad, 128 Mo. 224, 245, 27 S. W. 568, 30 S. W. 430.]

Moreover, the defendant had the benefit of an instruction to the effect that if the offer of reward for the capture or arrest of the slayer of Stanley Ketchel was made by defendant while laboring under strong excitement and without any intention of making a contract, but merely as a boast, then the verdict should be for defendant. This went to the limit in defendant's favor and perhaps stated the law too broadly, as we doubt about the unexpressed intention of a person offering a reward not to be bound by it being a defense against one who has honestly acted upon it. [9 Cyc. 578.]

The defendant claims error in the giving for plaintiffs of this instruction: "It was not necessary for plaintiffs to have heard of the reward before their arrest of Dipley, provided you find and believe from the evidence that they heard of the same before their delivery of him to the sheriff, provided further you find from the evidence they did deliver said prisoner to the sheriff after hearing of said reward, with the intention of claiming the same, provided you believe it was offered as explained in other instructions." While it is true that a person cannot claim a reward where the services were performed without the knowledge of the reward being offered or where he had no intention of claiming the reward, 24 Ency. of Law (2 Ed.), 958; 34 Cyc. 1752, yet, a performance begun without any knowledge of the reward being offered, or even before the reward is offered, when completed after such knowledge entitles the party to the reward. It is sufficient if any essential part of the service is performed after the party claiming it had knowledge of the reward being offered and relied on the same being paid. Delivery of the prisoner to the sheriff or into jail is an essential service in earning a reward. [34 Cyc. 1742.] Such is the clear holding of the Supreme Court in Smith v. Vernon County, 188 Mo. 501, 514, 87 S. W. 949, and of the Kentucky Court of Appeals in Coffey

v. Commonwealth, 37 S. W. 575. If we understand defendant's reasoning on this point, it is that plaintiffs' delivering the prisoner to the sheriff cannot be taken as part of the service which earned the reward offered in this case, as the proven offer was for his capture or arrest and did not include delivery to the officers. Therefore, it is urged that if the arrest, which alone is covered by this offer, was made before any knowledge of the reward being offered, the delivery to the officers was no part of the performance of the contract. This would be a too narrow and unreasonable construction of the contract and would result in holding that if plaintiffs with the intent of earning the reward had arrested the fugitive and at once turned him loose, they would have performed all that defendant's offer required. But that is not reasonable, as a reward for the arrest or capture of a fugitive clearly implies a safe delivery to the proper persons or place for holding him until trial. Thus, it is said in Coffey v. Commonwealth, supra, that: "The mere apprehension of a fugitive from justice neither subserves the purpose of the law, nor entitles the person making it to any reward, but there must be delivery of him into the custody of the proper officer." The delivery of the prisoner to the sheriff or into jail was therefore an essential part of earning the reward for his capture and being performed after the plaintiffs had full knowledge of the reward being offered, entitles them to the same.

This instruction, however, was hardly essential to plaintiffs' case, as the evidence clearly shows that plaintiffs had information of the reward being offered before making the arrest. This man Dipley, after shooting Ketchel in the morning, appeared in the evening at the farm house of the plaintiff Hoggard and was allowed shelter for the night. The other plaintiffs, one of them a brother, lived in the same neighborhood. One of them, Murphy, was at Niangua in

the afternoon, a town through which the special train passed both going to and returning from Conway, and there learned of the shooting and the offer of reward. After learning of this strange man being at his neighbor's house for the night and his suspicions being aroused, he spent the entire night trying by telephone to get a correct description of the slayer, Dipley, and succeeded in doing so. These facts were not contradicted. The other plaintiff, Hoggard, learned of the shooting, the special train, the offer of reward, etc., at a country store in the neighborhood on the evening of the shooting. He went to his brother's house at daylight the next morning, found Murphy there, and the three identified the man by certain marks on his body, made the arrest before Dipley had dressed, and at once took him to the county seat, Marshfield, passing through Niangua, where they saw a Springfield morning paper giving a full account of the murder, the efforts to capture the murderer, and stating that the offer of reward had been made. There could be little question therefore that plaintiffs had information of the reward and were acting on the same in making the arrest, as well as in delivering the prisoner to the sheriff.

The court instructed the jury on the defense of a settlement of plaintiffs' claim having been made by payment of $15, that the jury must find that such sum was paid and received on an agreement and understanding of both parties that it "was in full satisfaction of all claims by plaintiffs for a reward for the capture of the slayer of Stanley Ketchel," and placing the burden on defendant to so prove. The instruction is criticised as requiring a finding that plaintiffs received the $15 in satisfaction of all claims for reward, whether against defendant, the county, or State, or any other source from which a reward might come. This criticism is entirely too fanciful to be taken seriously. No intimation is found in the evidence of any

reward being offered or expected except that offered by defendant. Certainly the defendant was not concerned with any other and no other was being demanded of him. Jurors are sensible men and we have no suspicion even that any juror was misled by this instruction. Plaintiffs' version of this matter was that when they came to Springfield to collect the reward, the defendant of his own suggestion paid them this $15 as covering their expenses and as no part of the reward and promised plaintiffs to raise the amount of the reward among Ketchel's friends, inclusive of himself, within a few weeks. The jury believed this version of the matter and such was their privilege. Some stress is laid on the fact that the check for this $15 is marked: "Donation for capturing Stanley Ketchel's murderer." While this does not show that it was given to pay expenses, it is equally far from showing that it was given in settlement of the claim for reward. In fact, had it been so intended, defendant's business acumen would have led him to have marked it in less ambiguous terms. It was before the jury as evidence and not being conclusive either way its weight was for that body.

The defendant also complains of the refusal of a cautionary instruction, asked by him, telling the jury to receive with great caution any alleged statements of defendant on account of the liability of the witnesses to forget or misquote or misunderstand what was really said. If given, such an instruction should have applied to plaintiffs' statements as well as those of defendant, and is objectionable as singling out and commenting on the evidence as applied to only one party to the suit. The giving of this instruction was calculated to discredit the evidence introduced by plaintiffs and should not have been given in the absence of anything calling for such an instruction. It is generally held that the giving or refusing of such cautionary in-

180 App. 6

structions is discretionary with the court and does not constitute reversible error. [McCormick v. City of Monroe, 64 Mo. App. 197, 201; Beasley v. Jefferson Bank, 114 Mo. App. 406, 89 S. W. 1040; Webb v. Baldwin, 165 Mo. App. 240, 147 S. W. 849.] This is especially true where the court has given, as it did in this case, a general instruction as to the credibility of witnesses, including therein their means of knowledge and apparent intention to testify truthfully.

The plaintiffs rested their case on proof of the offers of reward made by defendant at the ranch, where the shooting occurred, and at the station of Conway, where the special train was standing. It seems that on the return trip to Springfield this train stopped at Marshfield and the defendant sought to introduce evidence that defendant there stated his offer of reward for Dipley and limiting it to his being dead. This offer was refused, the court limiting the evidence of both sides to what was said about the reward at the other two places mentioned. The defendant now claims that this evidence, sought to be introduced by him, shows a revocation of the former offers of reward, inasmuch as it was an inconsistent and later offer. The defendant invokes the doctrine that an offer or reward may be revoked at any time before it has been acted on. [34 Cyc. 1737.] There are several reasons why the evidence was properly excluded. In the first place, it was not offered for the purpose of showing a revocation of any previous offers of reward on different terms; defendant was denying that he had made any such previous different offers and his attorney stated that he was offering it to prove that this offer was the same as the previous offers: Second, in order to prove a revocation of a reward before it was acted on, such revocation is a matter of defense and must be pleaded, which was not done in this case. Kilpatrick v. Wiley, 197 Mo. 123, 167, 95 S. W. 213. Third, any revocation of the former offers must have

been intentional and there is nothing in the proffered statement of defendant at Marshfield in any way declaring or even indicating an intention to recall or revoke any previous offer: Fourth, it is correctly held in Shuey v. U. S., 92 U. S. 73, 23 L. Ed. 697, a reward case growing out of the assassination of President Lincoln, that an offer of reward may be withdrawn in the same way it was made at any time before it was acted on; and the fact that the person claiming the reward acted in good faith without knowing of the withdrawal does not entitle him to the reward, provided it was actually withdrawn in the same manner it was made prior to his entering upon the service. The court there said: "It is not to be doubted that the offer was revocable at any time before it was accepted, and before anything had been done in reliance upon it. There was no contract until its terms were complied with. Like any other offer of a contract, it might, therefore, be withdrawn before rights had accrued under it; and it was withdrawn *through the same channel in which it was made. The same notoriety was given to the revoca-tion* that was given to the offer; and the findings of fact do not show that any information was given by the claimant, or that he did anything to entitle him to the reward offered, until five months after the offer had been withdrawn." We do not think the facts of this case bring it within the rule there stated. The offers of reward, of which plaintiffs had knowledge and on which they acted, were made at and near to the scene of the crime; were intended to be acted upon at once and were virtually published to the neighborhood where plaintiffs lived. The offer of reward which defendant sought to prove as revoking the former offers, by limiting the reward to Dipley dead, was made within a half hour thereafter but in a different neighborhood and in a manner and under circumstances not calculated to bring knowledge of the revocation, if such it was, home to those who heard directly or indirectly

of the first offer. The revocation at best would travel slower than the offer and when made in so short a time after the offer, if defendant intended to make the revocation effectual, he should have seen to it that the revocation was unequivocal and if it could not have been published in exactly the same manner and to the same people to whom the first offers were made, yet the revocation should have been published in the same neighborhood at least.

The above are the errors mostly relied on for a reversal of this case and, while we have examined the others mentioned in the briefs or in the arguments, it would serve no useful purpose to prolong this opinion. We think the case was well tried and has been ably argued and briefed in this court. The verdict of the jury for plaintiffs received the approval of the learned trial judge. We find no sufficient reason for reversing it and therefore affirm the judgment.

*Robertson, P. J.*, concurs. *Farrington, J.*, not sitting.