CHARLES W. GALLAGHER

*vs.*

MARY GARRETT ET AL.

THE WILLIAM J. BURNS INTERNATIONAL
DETECTIVE AGENCY, Inc.,

*vs.*

MARY GARRETT ET AL.

*Distribution of Reward—Police of Another Jurisdiction—Services Based on Different Motive.*

Police officers of Baltimore County and of the City of Washington may share in the distribution of a reward offered for information resulting in the arrest and conviction of those guilty of a murder committed in Baltimore City.　　p. 245

That one furnishing information leading to the arrest of two of those guilty of a murder, was primarily moved, in furnishing such information, by a desire to obtain a discontinuance of a prosecution of her husband for an entirely distinct crime, which she succeeded in doing, is to be considered in the determination of her share in a reward offered for information resulting in the arrest and conviction of those who committed the murder.
pp. 246, 247

*Decided December 5th, 1923.*

Appeal from the Circuit Court No. 2 of Baltimore City (Duke Bond, J.).

Bill of interpleader by the A. S. Abell Company and others against Mary Garrett, the William J. Burns International Detective Agency, Incorporated, and other claimants,

. to determine the distribution of certain rewards offered by the plaintiffs. Charles W. Gallagher, and others, intervened as additional claimants. From a decree distributing the rewards, said Gallagher and said detective agency separately appeal. Reversed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*J. Marsh Matthews,* for the William J. Burns International Detective Agency, appellant.

*Richard E. Preece, Wilton Snowden, Jr., Lawrence S. Kaufman* and *Walter V. Harrison,* for various appellees, briefs being also filed by *Lawrence S. Kaufman, J. Royall Tippett, Daniel S. Sullivan* and *Howard A. Sweeten.*

STOCKBRIDGE, J., delivered the opinion of the Court.

On the 18th of August, 1922, Wm. B. Norris and Frederick W. Kuethe, Mr. Norris being an officer, and Mr. Keuthe an employee, of the Hicks, Tase & Norris Company, drew from the Commonwealth Bank a sum a little in excess of seven thousand dollars for the purpose of meeting the weekly pay-roll of the corporation. Having received the money at the bank, they proceeded eastward on Madison Street for one block to Park Avenue, where they were attacked. Mr. Norris was shot and killed by a young man who alighted from an automobile, and Mr. Kuethe was seriously assaulted. The bandits, together with the money they had seized, then jumped into the automobile and made their escape eastwardly on Madison Street.

The afternoon "Sun" of the same date published a notice of a reward of five thousand dollars for "information resulting in the arrest and conviction of the bandits who had murdered Mr. Norris." This notice was repeated in the morning paper of the following day, and within a few days thereafter, other sums were added by various persons and asso-

ciations to the amount thus offered by the "Sun," until an aggregate amount of ten thousand dollars had been reached.

A number of persons were arrested, supposed to be connected with the murder and assault, and were tried, some in Baltimore City, one in Baltimore County. Convictions were obtained, and some of the men are today serving life sentences in the State penitentiary as the parties guilty of the crime as principals.

Thereupon numerous persons appeared as claimants for the fund, or some portion of it, and those who offered the sums which made up the reward, in order to limit their liability to the amounts which they had offered, filed a bill of interpleader in the Circuit Court No. 2 of Baltimore City, setting out the facts mentioned, asking that they be allowed to bring money into court and that the several claimants might be required to substantiate their claims in the court.

The case came on to trial before the Judge of the Supreme Bench of Baltimore City who was at that time assigned to the said Circuit Court No. 2, and by him portions of the reward were ordered to be distributed among seventeen different claimants. These awards were in each instance fixed as to their amounts. From this decree two appeals were prayed.

By the decree of the Circuit Court No. 2, $575 was deducted from the gross amount of the reward offered, and the balance then remaining was ordered distributed among certain named claimants in specific amounts. The appeal having been taken, it necessarily follows that the costs in the case have been considerably increased, and therefore the amount remaining to be divided between the claimants will be somewhat reduced. It is impossible for this Court to make a distribution of absolute sums, but it will be compelled to send the case back with instructions to allow to certain of the claimants hereinafter named a specified percentage of the net amount in the hands of the clerk of the Circuit Court No. 2, proportioned to the relative value of the services rendered, after the payment of all of the costs.

The first appeal was by Charles W. Gallagher, to whom no allowance whatever was made, and the second by the William J. Burns International Detective Agency, upon the ground that the allowance named to that corporation was not as large as it was contended that it should have been.

Upon the first appeal, that of Gallagher, no one appeared in this court at the argument, and no brief was filed in Mr. Gallagher's behalf, though, after the argument, he did file with the clerk of this Court a letter with regard to his claim and a statement setting out the service which he claimed to have rendered.

This was somewhat irregular in form, and had there been a motion for the affirmance of the decree for failure to file a brief, there would have been good reason to grant it. Independent of that, a very careful examination of the evidence fails to disclose such assistance rendered by this claimant as to justify this Court in admitting him to a participation in any distribution of the reward.

No question was raised as to the right to distribute the reward among various parties. That has been too frequently decided to leave it an open question, and a citation of authorities would be superfluous. A collection of them will be found in 23rd *R. C. L.* 1133. There are but few questions of law to be passed upon. The first and most important is as to the right of police officials to share in any such distribution. No question arises with regard to the police officials of Baltimore City. Through the Attorney General they have disclaimed any right so to do.

The question arises mainly upon claims presented by certain police officers of Baltimore County and of the City of Washington. The question is one of public policy, whether officers of another jurisdiction should be permitted to participate in the distribution of a reward. With regard to this, adjudicated cases are not entirely harmonious. Quite a number of cases were cited, supposed to support the proposition that an officer of a county or state other than that

where the crime was committed, were so entitled to participate, while a smaller number of cases take the opposite view. Thus the general rule is supported by such cases as *Smith* v. *Vernon County,* 188 Mo. 501, which was a case of a policeman of another state. There are two cases in Louisiana, *Murphy* v. *New Orleans,* 11 La. Annual, 323, and *Pielie* v. *New Orleans,* 19 La. Annual, 274, which were cited as authority for the proposition that an officer was entitled to participate even in the jurisdiction where the offense was committed  In each of these cases, however, the decisions turned upon the fact that an unrepealed ordinance of the City of New Orleans granted the right to claim.  In *Gregg* v. *Pierce,* 53 Barb. 387, a deputy sheriff had pursued one suspected or accused of the crime from his own state into another.  In some of the cases the line is drawn as to whether the officer presenting the claim was or was not acting in the line of his duty; if he is, then no reward was allowable, whereas, if his service was performed in a different jurisdiction, whether state or county, and in which he was lacking in legal authority to make an arrest, his act was no more than that of any private citizen and participation was to be allowed.  In others of the cases, the line has been drawn upon whether or not he had a warrant for such arrest, and if he had not, then he was also entitled to participate  Some well reasoned opinions will be found in the cases of *Pool* v. *Boston,* 5 Cushing, 219; *In re Russell's Application,* 51 Conn. 577; *Lees* v. *Colgan,* 120 Cal. 262, and *Gray* v. *Martino,* 91 N. J. L. 462.

Accordingly, there can be no legal objection to including both the officers of Baltimore County and the City of Washington in the distribution of the reward.

The attitude of these officers is in striking contrast with that of the New York officials, who rendered most cordial assistance and valued and timely co-operation and aid, and not one of whom is asking any participation in the distribution of the reward.

A somewhat difficult question, though one more of fact than of law, arises in the case of the claim of Anna Livingston. Her husband was under indictment in several cases in the City of Baltimore, in connection with the stealing of automobiles. She was anxious to secure for him, as far as she was able, immunity from prosecution for these alleged offenses Seeing the announcement of, or learning of the offer of, a reward, and according to her testimony, being at the time in an impecunious position, she visited Baltimore for the purpose of securing if possible an immunity for her husband and at the same time of obtaining some money out of the reward which had been offered for the murderers of Mr. Norris, and she knew that Socolow and Hart were both suspected of participation in the crime. On reaching Baltimore she endeavored to communicate with the State's Attorney, primarily as affecting the cases against her husband, and by giving him the information which she possessed, with regard to the whereabouts of Hart, and perhaps also of Socolow, to secure the desired immunity for her husband. She encountered some difficulty in reaching the State's Attorney. This was, however, to a large extent obviated, and the knowledge which she had was communicated to others and eventually reached the State's Attorney. While declining to grant immunity, the State's Attorney did agree to enter a *stet* in the cases against her husband and, acting upon the information which she gave, officers of the Baltimore force were the same day sent to Washington, who participated in the arrest of Hart, with her connivance and assistance, and indirectly, early on the following morning, secured the arrest in New York of Socolow, these two men being believed by the police authorities of Baltimore to be the ones most wanted, Socolow for the shooting of Mr Norris, and Hart for the assault upon Mr. Kuethe. Mrs. Livingston thus became entitled to some recognition in connection with the reward, but she had obtained that which seems to have been the uppermost consideration with her, namely, the virtual discontinuance of the proceedings against her husband. Any allotment of the

reward must take this fact into consideration, and the allowance to which she might lay claim should be, to a considerable degree and correspondingly, reduced.

There are a few cases which hold in effect that the information given, or arrest made, must be done without knowledge of the reward which has been offered. No point was made of this in the argument and the number of these cases is so small that it does not now seem necessary to consider this remoter question.

This proceeding, being one in equity under the bill of interpleader, requires this Court to review the facts as well as the law.

The evidence adduced on behalf of the various claimants has been very carefully reviewed and considered. There are one or two facts which stand out prominently. The first of these is that the largest share of credit is to be given to the Burns International Detective Agency, which located Socolow and for some days trailed him, keeping him under constant surveillance until the time when he was taken into custody. Next in importance was Mrs. Livingston, who gave the information as to the presence of Hart in the City of Washington and where he might be found there, when the fact of his presence in that city was entirely unknown to the Washington police, until advised of it by officers who had gone over from Baltimore to make the arrest. The Baltimore County police, who arrested Smith, did so primarily for an entirely different matter, a misdemeanor committed in that county, and only after the arrest was made were their suspicions aroused by what was told them by the claimant Mell of the amount of money that Smith seemed to have on him.

It is not apparent that there would be any public end served by a recital, even in a condensed form, of the services of the several claimants. Suffice it to say that each one has received careful consideration with what to this Court seems a proper allowance in special cases, such as that of Mrs. Livingston, already referred to. The decree appealed from must be reversed, and the case remanded to the end that, after

the payment of all costs in the case, including the costs in this Court, the net balance remaining be distributed to the following claimants in the following percentages:

| | | |
|---|---|---|
| 1. | Burns Detective Agency | 36% |
| 2. | Anna Livingston | 12 |
| 3. | William Mell | 10 |
| 4. | J. Wade Walter | 5 |
| 5. | F. Edw. L. Benhoff | 2 |
| 6. | Kelly & Schrivener, jointly, | 3 |
| 7. | Solomon Robinson | 3 |
| 8. | Charles A. Brown | 7 |
| 9. | Geo. W. Bowen | 5 |
| 10. | Mary Garrett | 2 |
| 11. | L. V. Bossom | 1 |
| 12. | Marion McKee | 1 |
| 13. | Chas. Strodtman | 4 |
| 14. | Leslie Dean | 2 |
| 15. | Jno. Doemling | 3 |
| 16. | Max Willasch | 2 |
| 17. | Jno. Kramer | 2 |

. 100%

*Decree reversed and cause remanded, to the end that a decree may be entered in accordance with the foregoing opinion.*