HANNAH RUSSELL AND OTHERS *v.* MILO C. STEWART AND NOBLE
B. FLANAGAN.

### *Reward. Agency. Sheriff.*

F. was employed by the relatives of a murdered man to trace out the murderer and procure his conviction, and he sent messengers in different directions for this purpose, and directed one of them to request S., a deputy sheriff, to watch for and arrest the murderer. The message reached S. not directly from the messenger, but through L., and it did not appear that S. knew it came from F. S. arrested the murderer, and he was convicted. Said relatives offered a reward of $500 for the arrest and conviction of the murderer, but F. did not know of the reward when he sent out his messengers, and S. did not know of it when he made the arrest. *Held* that S. was entitled to the reward. Whether S. was informed that F. sent the message, or not, was not important, as there was no claim that he was aware that F. was charged with any special duty in the matter, or that in what he did he in fact acted as the agent of F.

Although S. was a deputy sheriff, yet as he had no process in his hands to execute, he
was under no special obligation or duty to go in search of the offender.

Doubtful whether F. could have enlarged his claim beyond what was implied in his con-
tract for service, if he had detected and brought the felon to justice, and there had
been no other claimant for the reward.

BILL OF INTERPLEADER. The case was heard upon bill, an-
swers and testimony, at the April term, 1871. PIERPOINT, Chan-
cellor. On the hearing it was *pro forma* adjudged that the
defendant, Milo C. Stewart, is entitled to receive the reward of
$500 mentioned in the orators' bill; and it was ordered and de-
creed that the orators pay said reward — with interest thereon from
a date named — to the said Stewart. From this decree the defend-
ant, Flanagan, excepted. All the facts are stated in the opinion
of the court.

The offer of the reward was made by an editorial notice in a
newspaper, and was as follows:

### " FIVE HUNDRED DOLLARS REWARD.

" We are authorized to say that five hundred dollars reward
will be paid by Edward Russell, of Hinesburg, for the arrest and
conviction of the murderer of his father, Perry Russell, of Hines-
burgh, on the night of the third of October last."

*E. R. Hard,* for the defendant, Flanagan, maintained that it is
not material, so far as concerns the right of either of the inter-
pleading parties to the reward, whether the offer of the orators
was to pay $500 " for the arrest and conviction " of the murderer,
or was to pay that sum to the person who should " procure the
arrest and conviction," etc.: for in either case, if the arrest was
made by Flanagan's direction and request, or if he was the sub-
stantial and immediate cause of its being made, he is clearly en-
titled to the reward. *Crawshaw* v. *Roxbury,* 7 Gray, 374; *Besse*
v. *Dyer,* 9 Allen, 151; *Jenkins* v. *Kelren,* 12 Gray, 330; *Bren-*
*nan* v. *Haff,* 1 Hilton (N. Y. C. P.), 151; *Stephens* v. *Brooks,*
2 Bush. (Ky.), 137. But, upon the pleadings and testimony,
we insist that the offer is shown to have been made to any one who
should *procure* the arrest, etc. It is so alleged in the bill, and is
admitted in the answers. The orator, Russell, testifies that it
was the idea of the orators " to offer an inducement to get some

one to take hold and ferret it out, and catch the offender and bring him to justice." And this form of an offer is the most natural, under the circumstances. The newspaper item is entitled to no consideration on this point, as it is a mere brief editorial notice of the orators' offer; and Bigelow testifies that the item was intended only as a statement of the *substance* of what Russell stated to him, and that Russell may have said they would pay $500 " to anybody who would ferret out the murder." Moreover, Stewart did nothing more in respect to the arrest and prosecution of Welcome, than it was his duty to do as an officer and subpœned witness; and this alone is sufficient to prevent a recovery by him of the reward. *Pool* v. *Boston*, 5 Cush., 219; *Davis* v. *Burns*, 5 Allen, 349.

*Paul Dillingham*, for the defendant Stewart.

The opinion of the court was delivered by

REDFIELD, J. The orators offered a reward of $500 for the arrest and conviction of the murderer of their kinsman, Perry Russell. And this bill in equity is brought to compel the defendants, (claimants of such reward), to *interplead* and thus determine their respective claims.

The material facts in the case are, that the said Perry Russell was brutally murdered on the night of the 3d of October, 1868; that his relatives and the community of his acquaintance were greatly shocked and excited; that defendant, Flanagan, was immediately employed by the orators to trace out the murderer and procure his conviction. That Flanagan, on examination, became immediately satisfied that Henry Welcome was the perpetrator of the crime, and placed sentinels at various posts, and sent messengers in different directions to watch the highways and examine the trains of cars on the several railroads in the State, for the purpose of arresting the said Welcome. He sent two messengers (Lane and Bostwick) to Waterbury, in that service, and among other things, requested them to ask the defendant, Stewart, (who was a deputy sheriff and had personal knowledge of said Welcome), to watch for and arrest him. Lane and Bostwick did not see Stewart, but they left the message with Love, who kept the ho-

tel at Waterbury. Love informed Stewart of the murder, and requested him to use his diligence to arrest Welcome ; but whether he informed him that Flanagan had sent the message the evidence leaves in doubt. Stewart, within a few minutes after this notice, arrested Welcome in a train of cars at Waterbury. The reward was offered and published immediately after the murder ; but Stewart had no knowledge of it at the time of the arrest. Neither had Flanagan any knowledge of the reward offered at the time he sent messengers to Waterbury. He was in the employ of the orators, and, so far as the case shows, entitled to reasonable compensation. Stewart made the *arrest,* and *conviction* ensued, and we think brings himself within the spirit if not the terms of the offer. Whether Stewart was informed that Flanagan sent the message or not, we do not deem important, as there is no claim that he was aware that Flanagan was charged with any special duty in the matter, or that, in what he did, he in fact acted as the agent of Flanagan. He testifies himself that, as soon as he had notice from Love of the murder, and the person suspected, he, of his own motion, went in pursuit of the felon, and we see no reason to doubt the motives by which he was actuated.

Flanagan was in the employ of the orators to detect and bring the felon to justice, at the time the reward was offered ; and though there was no fixed compensation for his service, he was entitled, by contract, to a fair and reasonable remuneration, though his efforts should prove abortive ; and it may be doubtful, whether, if successful, and there had been no other claimant to the reward, he could enlarge his claim beyond what was implied in his contract for service — reasonable compensation. *Davis* v. *Munson* 43 Vt., 676. *Pool* v. *Boston,* 5 Cush., 219. It is claimed that Stewart, being at the time of the arrest a deputy sheriff, cannot recover the reward. He had no process in his hands to execute, and was under no special obligation or duty to go in search of this offender. *Davis* v. *Munson, supra.*