CHARLES H. MARSH, *Appellee,* v. THE WELLS FARGO & COMPANY EXPRESS, *Appellant.*

No. 17,907.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Reward—"Arrest and Conviction"—Deputy Sheriff.* Where a suspected felon is arrested without a warrant by a deputy sheriff of a county other than the one wherein the arrest is made he is not debarred from recovering a reward therefor merely because he is such officer.

2. EVIDENCE—*Demurrer.* It is held that the evidence in this case tended to prove a substantial compliance by the plaintiff with the terms of a reward offered for the arrest and conviction of a criminal and that the district court did not err in overruling a demurrer thereto.

Appeal from Marion district court. Opinion filed January 11, 1913. Affirmed.

*William R. Smith,* of Topeka, for the appellant.

*W. H. Carpenter,* of Marion, and *C. M. Clark,* of Peabody, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to recover a reward offered for the arrest and conviction of a criminal. The appeal is from a judgment for the plaintiff on a demurrer to evidence.

On or about March 29, 1908, an express messenger on a westbound train on the Atchison, Topeka & Santa Fe railway, in Marion county, was killed. The defendant offered $1000 reward for the arrest and conviction of the party who killed the messenger. The plaintiff learned of this offer early on March 29, from the agent at Peabody who called him in and showed him a telegram containing it. He immediately went to work on the case and called up Newton, giving notice of two men he suspected, but they were not implicated in the

crime. Two special agents of the defendant came to Peabody, where the plaintiff lived, and conferred with him about the case. He suggested that an alarm be turned in to notify the members of the anti-horse thief association, which was done. A report came in of a suspicious character out in the country, and the plaintiff went out and investigated, and found the suspected man to be innocent. In the afternoon a telephone call from Wagner, a near-by station, informed the plaintiff that a bloody hatchet had been found near the railroad. The plaintiff went out and took possession of the hatchet. The special agents then requested the plaintiff to watch that end of the line and report if anything was found. The plaintiff suggested that it was foolish to be looking for a hobo, that in his opinion the crime was committed by some express messenger who had been discharged, or some one who knew as much about the business as the murdered man. On Tuesday morning, March 31, the plaintiff went to Newton on a message from one of the two special agents, or from Mr. Germain, a secret service officer of the railway company who was acting with them in the matter. He had worked with these special agents before and supposed that he was wanted in connection with the case. He was a deputy sheriff of Marion county and city marshal of Peabody. On reaching Newton the plaintiff arrested Carr, the suspected murderer, in a billiard hall there. He described the arrest in his testimony:

"I had no warrant. That was in Harvey county. I took him into custody as the offender in the matter wherein it was alleged that somebody had murdered Oscar Allen Bailey. I alone took Carr into my charge. I went into the building and fetched him out alone. There was a crowd around there, a big crowd both in the back of the hall and in front of it, at least in front of it. At that time it was not known where Mr. Oscar Allen Bailey was killed. I brought him from there (Newton) to Marion county and put him in jail. . . .

"I did n't know Carr up to the time I arrested him.

Cummings, of Newton, I think, pointed him out to me. Mr. Long went as far as the stairway. I did not suggest to these people that Carr was the man to be arrested. I could not say who suggested the propriety of arresting Carr for this murder. I had all my talk with Mr. Germain, Chief Special Agent of the Santa Fe road, who was working on the case.

"Q. Up to the time you arrested Mr. Carr, which you say was Tuesday in the afternoon, what evidence had you personally gathered up against him? A. As much as the rest of them.

"Q. What evidence had you gathered against him? A. All that any of them knew, that he was in Kansas City and came back that night to Newton.

"Q. Did you furnish that information to them? A. That was the talk.

"All the talk I had with anybody at Newton up to the time the arrest was made was with Germain. I had never seen Carr before that. Somebody pointed him out and I arrested him."

The plaintiff had no warrant but took Carr into custody, told him he was charged with murder, and took him at once to Marion county and placed him in jail. Afterwards a complaint was made and a preliminary examination was held. Carr was tried twice in the district court, and at the last trial was convicted of the murder of the express messenger. The plaintiff was a witness for the state at the preliminary examination and upon each trial, consulted with Mr. Germain and the public prosecutors about the conduct of the case, and was active in procuring evidence for which he received no compensation. He produced the hatchet at these trials and it was put in evidence. At the last trial he procured two boys to go to Kansas City and ride to Florence, one on the rods and the other on the blind baggage, and produced them in court as witnesses to show their dirty and grimy condition. This was done at the instance of the defendant's representatives upon consultation with one of the prosecuting attorneys to rebut the claim of Carr that he had journeyed from

Kansas City on the outside of the car, it being further shown that he was neat and clean when he alighted from the car. The plaintiff procured clothes for the boys, accompanied them to and from Kansas City, looked out for them at each stop, and took them in a carriage from Florence to the court room. His expenses were paid by the prosecuting attorney, presumably for the defendant. During the trials, and in the interval between them, the plaintiff was looking out for evidence and held several consultations with the prosecuting attorney.

As deputy sheriff he had an arrangement whereby he was to receive one-half the fees upon papers sent to him for service. He has received nothing in the Carr case. He testified that his one-half for the arrest of Carr was coming to him.

The defendant offered on the cross-examination of the plaintiff to prove by him that the express company brought in witnesses from other states who testified. The court excluded the offer on the ground that it was not proper on cross-examination.

The defense is based (a) upon the proposition that it is against public policy to permit a deputy sheriff to recover a reward in such case, and (b) that the plaintiff did nothing to entitle him to receive it.

It is contrary to public policy to allow an officer to recover a reward for the performance of an official duty. (*Matter of Russell's Application*, 51 Conn. 577; *Bank v. Edmund*, 76 Ohio St. 396, 81 N. E. 641, 11 L. R. A., n. s., 1170, 10 A. & E. Ann. Cas. 726; *United States v. Matthews*, 173 U. S. 381; 34 Cyc. 1753.)

On the other hand, no rule of public policy forbids such recovery where the officer is under no obligation arising from his official character to perform the service. (*Smith v. Vernon County*, 188 Mo. 501, 87 S. W. 949, 107 Am. St. Rep. 324, 70 L. R. A. 59; *Russell et als. v. Stewart et al.*, 44 Vt. 170; 34 Cyc. 1755; 24 A. & E. Encycl. of L. 953.)

The general duties of a sheriff are stated in the following statute:

"It shall be the duty of the sheriff and under-sheriffs and deputies to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots and unlawful assemblies and insurrections, for which purpose, and for the service of process in civil or criminal cases, and in apprehending or securing any person for felony or breach of the peace, they, and every coroner and constable, may call to their aid such person or persons of their county as they may deem necessary." (Gen. Stat. 1909, § 2197.)

Another statute provides that:

"If any person against whom a warrant may be issued for an alleged offense committed in any county shall, before or after the issuing of such warrant, escape from or be out of the county, the sheriff or other officer to whom such warrant may be directed may pursue and apprehend the party charged in any county in this state, and for that purpose may command aid and exercise the same authority as in his own county." (Crim. Code, § 39.)

The right and duty of sheriffs to make arrests without warrant for crimes committed in their presence, and for past felonies in certain circumstances which need not now be defined, may be conceded. (1 Bishop on Criminal Procedure, § 183; *Bank v. Edmund,* supra.)

But we know of no rule of law which makes it the official duty of a deputy sheriff of a particular county to arrest a supposed felon in another county without a warrant in the circumstances here shown. In the Edmund case, cited above, a constable who had made such an arrest was denied the right to recover a reward, but he was acting within the limits of his territorial jurisdiction. The court said:

"A constable, in this state, is, by virtue of his office, a conservator of the peace, and whenever he has knowledge or specific information that a felony has been committed at a particular locality within his ju-

risdiction, it is clearly his duty to take diligent and prompt measures for the arrest and apprehension of the perpetrators of said crime, and where he does this, and secures their arrest, the law will not hear him say or permit him to claim that an arrest thus effected, pursuant to official duty, was made by him in his individual capacity as a private citizen." (*Bank v. Edmund,* 76 Ohio St. 396, 404, 81 N. E. 641.)

In *Harris v. More,* 70 Cal. 502, 11 Pac. 780, a recovery of a reward by a deputy sheriff was affirmed in a case quite similar to this. The court said:

"As the plaintiff had no legal duty to perform, by virtue of his office of deputy sheriff, in regard to discovering the evidence and causing it to be produced, having no writ to execute, and the offense having been committed and the trial had out of his county, we do not think the policy of the law forbade his receiving the compensation." (p. 503.)

In *Kinn v. First Nat. Bank,* 118 Wis. 537, 95 N. W. 969, 99 Am. St. Rep. 1012, it appeared that an arrest of a bank robber had been made by a city marshal within the city limits. A statute made it the marshal's duty to arrest without process any person found violating any law of the state. It was held that the marshal was not debarred because of any official duty resting upon him from recovering a reward offered for the arrest of the robber.

A similar decision was made in Indiana, in *Bronnenberg v. Coburn,* 110 Ind. 169, 11 N. E. 29.

It was held in *Davis v. Munson,* 43 Vt. 676, that a deputy sheriff who had in his own county arrested a person who had broken jail in another county was entitled to a reward offered for the capture of the prisoner. That case was cited and followed in *Russell et al. v. Stewart et al.,* 44 Vt. 170, where it appeared that an arrest was made without warrant by a deputy sheriff. The report does not state whether the deputy made the arrest in his own county or in another.

(See, also, *Kasling v. Morris,* 71 Tex. 584, 9 S. W.

739, 10 Am. St. Rep. 797; Note, 11 L. R. A., n. s., 1170; Note, 10 A. & E. Ann. Cas. 729.)

It is concluded that the fact that the plaintiff was a deputy sheriff of Marion county when he arrested Carr —the arrest having been made in Harvey county— does not preclude him from recovering the reward.

Concerning the claim that the plaintiff did nothing which would entitle him to the reward, it should be observed that upon the demurrer to the evidence the question was whether the evidence tended to prove a performance of the services stipulated for in the offer; that is, an arrest and conviction. The arrest was made by the plaintiff alone and is undisputed, and the conviction followed. It can not be said that in a strict literal sense any particular person or persons convicted Carr. That was accomplished through the coöperation of the plaintiff, the special agents of the company, and the prosecuting officers; the court, jury and witnesses also performed appropriate functions in bringing about the result. It was said in *Elkins v. Wyandotte County*, 86 Kan. 305, 120 Pac. 542, of an arrest as a condition of recovery of a reward:

"Since it is not within the power of any citizen, literally, to do, by himself or his agents, the things specified in the statute and in the published offer, it is held that if he substantially accomplishes the full objects of the offer, aided by the officers of the law in the orderly performance of their official duties, he has met the conditions of the contract and earned the reward." (Syl. ¶ 2.)

This language is quite as applicable to a conviction as to an arrest. Offers must in such cases be liberally construed in the sense in which they are ordinarily understood and acted upon and the purposes for which they are intended. A substantial compliance is sufficient. (*Crawshaw v. City of Roxbury*, 73 Mass. 374; *Haskell v. Davidson*, 91 Maine, 488, 40 Atl. 330, 42 L. R. A. 155, 64 Am. St. Rep. 254.)

It is held that the evidence tended to prove the plaintiff's cause of action and that there was no error in overruling the demurrer thereto. If it should be conceded that the district court ought to have received the evidence offered upon the cross-examination of the plaintiff, which was excluded, the result would not be changed, for, considering the part rejected as though received, the evidence would still tend to prove a cause of action.

The judgment is affirmed.