## CHAMBERS *v.* OGLE.

# Opinion delivered March 1, 1915.

1. REWARD—ARREST AND CONVICTION OF A CRIMINAL.—Where a reward is offered for the arrest or capture and conviction of a fugitive criminal, in order for one to come within the terms of the contract so as to bring about an acceptance and performance, the reward will be payable to the one who performs these conditions and not merely to one who gives information which leads to the capture and conviction.

2. REWARD—CAPTURE OF CRIMINAL—FURNISHING INFORMATION.—Where a reward is offered for the arrest and conviction of a criminal, and one O. merely gave information as to the criminal's identity, without entering jointly into the enterprise, and others, proceeding independently upon that information, performed the acts which come within the terms of the offer of reward, O. will not be held entitled to receive any part of the reward, simply because she furnished information.

3. REWARD—OFFICER DISCHARGING OFFICIAL DUTY.—The policy of the law forbids an officer, or one called to aid him in the performance of an official duty, to receive for his services any reward or compensation not allowed by law.

4. REWARD—PUBLIC OFFICER—EXCEPTION TO RULE.—The rule just stated is subject to the exception that where the officer has no duty to perform in regard to the arrest, there is no public policy which forbids that he should share in the reward for services performed, which do not constitute a part of his official duties.

5. REWARD—ARREST BY COUNTY OFFICERS OUTSIDE THE STATE.—County officers may share in a reward offered for the arrest and conviction of a fugitive criminal, where the arrest was made in another State, and the officers had no warrant for an arrest, and acted in an entirely private capacity.

6. REWARD—ARREST OF FUGITIVE—JOINT ENTERPRISE.—Several persons acted together in accomplishing the arrest of a futitive criminal. *Held*, under the facts, they were acting in a joint enterprise and were all entitled to share in the reward.

7. REWARD—CAPTURE OF CRIMINAL—EXPENSES.—Where a number of persons engage in the joint enterprise of procuring the arrest of a certain fugitive criminal, each will be entitled out of the reward to have refunded his individual expenses, incurred in the prosecution of the enterprise.

8. APPEAL—COSTS.—Appellant appealed from a decree in chancery pro rating a reward offered for the arrest and conviction of certain fugitive criminals. The decree was reversed for certain errors of the chancellor in apportioning the reward. *Held*, appellant, who

was successful on the appeal, is entitled to judgment against all the appellees for the costs of the appeal.

Appeal from Madison Chancery Court, *T. H. Humphreys,* Chancellor; reversed.

*J. W. Grabiel,* for appellant.

1.  Appellee, Flora Ogle, is not entitled to any part of the reward. Where a reward is offered for the capture and conviction, or for the capture, of an offender, the mere giving of information which enables others, acting independently of the informer, to make the arrest, is not sufficient to entitle the informer to share in the reward. 28 N. E. 1022; 122 Pa. St. 115. See, also, 50 Cal. 218; 191 Ill. 610, 61 N. E. 456, 85 Am. St. Rep. 278; 24 Wis. 278.

2.  The intervener, Seaton, in what he did was acting as the agent of appellant in the capture of Moore, and is not entitled to share in the reward. 92 U. S. 73, 76; 85 Ill. 174; 78 S. W. 194.

3.  Berry, Vaughan and Shuster, are not entitled to share in the reward, because (1) their participation in the events preceding the capture, etc., was inadequate and insufficient as concerns the capture, and was the exercise of only the ordinary duties which devolved upon them as officers of Madison County, as concerns the conviction. (2) They are precluded by considerations of public policy from receiving the reward.

As to the capture, these parties did nothing that would entitle them to any part of the reward. Chambers was acting alone and independently and for the reward.

The reward was offered for the capture and conviction. A substantial compliance was all that was required. 88 Kan. 538, 129 Pac. 168, 43 L. R. A. (N. S.) 133; 86 Kan. 305, 120 Pac. 542. The burglars entered a plea of guilty. There was no trial resulting in a conviction although appellant was ready with the evidence he had gathered together. The capture was the proximate cause of the conviction, entitling appellant to the reward. 24 Am. & Eng. of L. 956.

The sheriff and deputies are not entitled under the law, to receive any reward other than that provided by law for the performance of their duty.  34 Cyc. 1753; 11 L. R. A. (N. S.) 1170; 81 N. E. 641; 66 Misc. 85, 120 N. Y. Supp. 686; 173 U. S. 381; 112 Va. 28, 70 S. E. 515; 51 Ark. 504.

The decisions are conflicting on the question here presented, but we think that the decision in *Gregg* v. *Pierce,* 63 Barb. 387, holding that a sheriff pursuing a fugitive into another State and causing his arrest there and return, was entitled to the reward offered, and the line of decisions following that, are in conflict with the better reasoning on the subject.  See, also, Sergeant Hawkins, P. C. Ch. 68, § 4; 188 Mo. 501; 87 S. W. 949; 107 Am. St. Rep. 324; 150 Ky. 805; 150 S. W. 1020; 43 L. R. A. (N. S.) 131; 23 Am. & Eng. Enc. of L. 455; 32 Cyc. 1251, and notes; 164 Pa. St. 266-271; 81 Ark. 599; 95 Ark. 552; 85 Ark. 106; 155 Pa. St. 514.

4.  Appellant is not excluded on the grounds of public policy from participation in the reward.  No consideration of public policy operates to disqualify a police officer of a State foreign to the jurisdiction where the offense was committed from accepting a reward offered for the capture of the offender.  188 Mo. 501, 87 S. W. 949, 107 Am. St. Rep. 324; 88 Kan. 538, 129 Pac. 168, 43 L. R. A. 133; 35 Ala. 544; 24 Am. & Eng. Enc. of L. 953; 130 N. W. 1025, 34 L. R. A. (N. S.) 924.

*Wade H. James,* for appellee, Ogle.

The rule of law applicable here is stated as follows: "When the reward is offered for the arrest or apprehension of a criminal, most cases hold that the person who causes the arrest to be made by an officer, or other person, or who furnishes the information which leads directly to the arrest, has complied with the terms of the offer and is entitled to the reward."  34 Cyc. 1745.

It is not necessary that an informer, in order to entitle him to a reward, should act as a prosecutor, or be called as a witness.  It is enough that the result is

in fact reached primarily through his instrumentality. I
Low 284, amd cases cited; 42 L. R. A. 155; 91 Me. 488.

McCULLOCH, C. J. This action is one to recover
the amount of a reward offered for the arrest and con-
viction of certain criminals. It was instituted by Mrs.
Flora Ogle, one of the appellees, against the First
National Bank of Huntsville, Arkansas, and certain par-
ties to whom the bamk had paid the reward. Appellant,
who was a police officer in the State of Oklahoma, and
G. W. Seaton, a police officer in the State of Missouri,
separately intervened claiming the amount of the reward
or a portion thereof.

The bank was burglarized on the night of June 13,
1912, amd a large sum of money was taken. The bank
published an offer of payment of a reward of the sum
of $500 for the capture and conviction of each of the
parties who committed the crime, and also a reward of
25 per cent of all of the stolen money recovered. Two
of the criminals were arrested, brought back to Arkansas,
and convicted, both of them entering pleas of guilty.
One was arrested in Oklahoma by appellant Chambers,
amd the other in the State of Missouri by appellee Seaton:
A small amount of money was returned, and the reward
for the two men amd for the amount of money recovered
aggregated the sum of $1,047.93, which was paid over
by the bank to appellees Shuster, Berry and Vaughan,
who were officers of Madison County, where the crime
was committed, and who brought the prisoners back
and put them in jail. Shuster was sheriff of the county
and Berry and Vaughan were his deputies.

They got a trace of the criminals and followed it to
Fairland, Oklahoma, where one of them named Monroe
was arrested; and a telegram was sent to appellee Seaton,
by an officer in Oklahoma acting at the instance of appel-
lant and the Arkansas officers and Seaton arrested the
other one of the criminals named Moore. The first trace
of the criminals discovered by the Madison County offi-
cers was through Mrs. Ogle, who kept a boarding house
at Eureka Springs. Three men stayed at her house about

the time of the bank robbery, and after they left she found in a cuspidor a mutilated envelope bearing the name of one Brock Moore of Fairland, Oklahoma. She gave the torn envelope to the Madison County officers, who concluded that it would lead to the arrest of the criminals, and when they got to Fairland they called in consultation appellant Chambers, who was the marshal of the town. Appellant knew Brock Moore, but informed them that he did not answer the description of either of the three men as given, but he expressed the view that other parties, particularly the man who went by the name of Monroe, were implicated in the commission of the crime. He based his suspicion on the fact that Monroe appeared to be associated in some way with Brock Moore, and that he had been absent about the time the bank robbery was committed. They found that the two suspected men, Monroe and Moore, had left town that day in vehicles hired from local livery stables. They went around to one of the livery stables, where Monroe got his team, and watched the place until Monroe's return; and when he drove back to the barn, appellant arrested him. Shuster and Vaughan were present at the time, but Berry had left the stable a short time before. Monroe was turned over to the three Madison County officers and they brought him back to Arkansas. It was found on inquiry that the other man, Moore, had driven over to Afton, a neighboring town, and appellant and Berry got a team and drove over there the same day. When they got there, they found that Moore had driven another team over to Vinita, another neighboring town. Appellant called over the phone one Ridenhour, a deputy U. S. marshal, and got him to hire a team and drive over to the railroad and attempt to intercept Moore. Ridenhour did this at the request of appellant, and when he found that Moore had probably taken a train which carried him through Nevada, Mo., he telegraphed to Seaton, the police officer at that place, requesting him to board the train and arrest Moore. Seaton, upon receipt of the telegram, complied with the request and made the

arrest and held Moore until the Arkansas officers could go up and get him, which they did, in company with appellant Chambers.

This, in brief, is a statement of the facts of the case as established by a preponderance of the testimony. There is some conflict as to the method of the arrest of these men, but the chancellor found the facts, as we understand, about as stated above.

The chancellor found that the efforts of all of the parties contributed equally to the arrest of the criminals, and that they were entitled to share equally in the amount of the reward, after deducting the expenses. The net amount paid over by the bank to the Madison County officers, after deducting expenses paid out by them, was $853.32, and the chancellor found that appellant also expended $10.45 and that Seaton had expended $2.40. The chancellor deducted these amounts, and also the sum of $38.20, the costs of this action, leaving a net amount of $802.27. He divided this and apportioned half as the net amount realized of the reward for the arrest of Monroe, and the other half as the amount of the reward for the arrest of Moore. The first half was divided equally between appellant and Mrs. Ogle, Shuster, Berry and Vaughan, giving them the sum of $80.22 each; and the other half was equally divided between appellant and Mrs. Ogle, Shuster, Berry, Vaughan and Seaton, giving them $66.85 each.

Appellant Chambers is the only one who appealed from the decree. Appellant contends that he is entitled to the whole of the reward for the arrest of both of the criminals. His contention is that Seaton, in making the arrest of Moore, acted merely as his (appellant's) agent, and for that reason is not entitled to the reward; and that he is entitled to the whole of the reward for the arrest of Monroe for the reason that the Madison County officers did not in fact make the arrest, and for the further reason that it is against public policy to allow them to receive the reward because they were officers charged

with the duty of arresting criminals. His contention is that Mrs. Ogle is not entitled to any of the reward for the reason that she, at most, only furnished information which eventually led to the arrest of the criminals, and did not perform acts which amounted to an acceptance and performance of the contract set forth in the offer made by the bank. The nature of the contract must be considered in determining the rights of the respective parties to claim the proffered reward. "The offer of a reward," said this court in *Amis* v. *Conner*, 43 Ark. 337, "is a promise conditional upon the rendition of some proposed service. He who offers it has the right to prescribe any terms he may see fit and these terms must be complied with before any contract arises between him and a claimant." Now, the offer in this case on the part of the bank was to pay "a reward of $500 each for the capture and conviction of the robbers, and    *    *    *    25 per cent of whatever part of the money recovered." Those who seek to recover the amount of the reward from the offerer must show that they have performed acts which come within the terms of the contract. For that purpose a contract is not to be literally construed, but it must appear before a party can recover the reward that his acts come substantially within the stipulated terms. In the case of *McClaughry* v. *King*, 147 Fed. 463, 7 L. R. A. (N. S.) 216, the United States Circuit Court of Appeals for the Eighth Circuit had under consideration the question of liability for a reward which had been offered for the "capture and conviction" of a certain murderer, and the claimant sought to recover the reward on the ground that he had furnished information which led to the arrest and conviction. The court held that under the terms offered the reward was not earned by the giving of information which merely led to the arrest and conviction of the criminal, and that the offer was to pay only to the one who actually captured the criminal. In the opinion the court said: "A reward offered for the arrest of an offender is an offer or conditional promise to pay the person performing the required service

a certain sum of money. The performance of the service is the acceptance of the offer, or performance of the condition on which the promise is made, and, when done, concludes a binding contract. The matter rests exclusively in the domain of contract, involving an offer and its acceptance. One desiring to offer a reward may fix his own terms and conditions. If they are satisfactory they must, like other propositions, be accepted as made. If unsatisfactory no one need accept them." Numerous authorities are cited in that case sustaining the proposition that under an offer similar to the terms stated in that case there can be no recovery by one who merely furnishes information which leads to the arrest and does not actually capture the criminal.

(1-2) The authorities are not entirely in accord, but we are of the opinion that the view above stated is in line with the great weight of authority and is correct on principle. The decisions seem to agree that the terms of the offer are not to be literally interpreted for the reason that it would be impossible for the person seeking the reward to actually bring about a conviction, inasmuch as that must be accomplished through other agencies established by the law. But where the reward is dependent upon the arrest or capture and conviction of a fugitive, in order to come within the terms of the contract so as to amount to an acceptance and performance, the reward is payable to the one who performs those conditions, and not merely to one who gives information which leads to the conviction. This does not mean that in all cases a person who merely gives information should be excluded from sharing in the reward, for persons often engage in a joint enterprise of this sort where one is to furnish the information and the other is to make the arrest, and they thus share jointly in the fruits of the enterprise. The present case, however, so far as Mrs. Ogle is concerned, presents a state of facts where one person has merely given information without entering jointly into the enterprise, and others, proceeding independently upon that information, have performed the

acts which come within the terms of the contract. That being true, it follows that Mrs Ogle is ⌐not entitled to receive any part of the reward simply because she furnished information.⌐ Any other view might bring within the terms of the contract numerous persons who had brought to light circumstances, however slight, which amounted to information which led in some degree to the arrest. It is not contended that Mrs. Ogle did anything more than furnish this bit of information about the torn envelope containing the name of Brock Moore. She turned this over to the officers and they proceeded independently in the further steps of apprehending the criminals. If she can recover at all, it must be upon an independent contract made with the officers to whom she furnished the information, and, according to the preponderance of the testimony, there was no such contract entered into with her. We are of the opinion, therefore, that she is not entitled to share in the reward. It is true neither the Madison County officers nor the bank have appealed from that part of the decree which awarded a portion of the amount to Mrs. Ogle, but it is necessary to determine her rights in order to decide whether or not the amount awarded to her should have been deducted from the proportion of the amount decreed to appellant, if we decide that he is entitled at all to share in the reward.

(3-4) Now, the next question for consideration is whether or not the Madison County officers are entitled to share in the reward. According to the testimony, they traced the criminals to Oklahoma and caused their arrest, one in Oklahoma and the other in Missouri. The arrest was actually made by the two officers in those States, and if the Madison County officers are, for any reason of public policy, forbidden from receiving the reward, then it follows that the officers who made the arrest are entitled to the whole of the reward. This court has decided that "the policy of the law forbids an officer, or one called to aid him in the performance of an official duty, to receive for his services any reward or compen-

sation not allowed by law." *St. Louis, I. M. & S. Ry. Co.* v. *Grafton,* 51 Ark. 504. That was a case where the railway company offered a reward in this State for the apprehension of persons found interfering with switches, side tracks, and other railroad property during a strike. Certain parties were arrested by the sheriff, and others composing the *posse comitatus* of the sheriff, and suit was brought to recover the amount. This court denied recovery on the ground of public policy, as above stated. That decision is undoubtedly sound and is in accord with the weight of authority, being cited in many subsequent cases. *United States* v. *Matthews,* 173 U. S. 381; *Somerset Bank* v. *Edmund,* 11 L. R. A. (N. S.) 1170; *Burkee* v. *Matson,* 34 L. R. A. (N. S.) 924; *Mason* v. *Manning,* 150 Ky. 805, 43 L. R. A. 131. The rule, however, has its exceptions, and one is that where the officer has no duty to perform in regard to the arrests there is no public policy which forbids that he should share in the reward for services performed which do not constitute a part of his official duties. There are many cases holding that where officers make arrests outside of their own jurisdiction, especially where they follow criminals to other States and make arrests, they are entitled to the reward. *Morrell* v. *Quarles,* 35 Ala. 544; *Gregg* v. *Pierce,* 53 Barb. 387; *Davis* v. *Munson,* 43 Vt. 676; *Forsythe* v. *Murnane,* 113 Minn. 181; *Bronnenberg* v. *Coburn,* 110 Ind. 169; *Kinn* v. *First National Bank,* 118 Wis. 537, 99 Am. St. Rep. 1012; *Smith* v. *Vernon County,* 188 Mo. 501, 70 L. R. A. 59; *Marsh* v. *Wells Fargo & Co. Express,* 88 Kan. 538, 43 L. R. A. (N. S.) 133; *Harris* v. *More,* 70 Cal. 502.

(5) The case of the Madison County officers falls, we think, within the exception. The criminals fled from the county and State before they were discovered or their identity was known by any one. There were no warrants in the hands of these officers, and in an entirely private capacity they followed the clew discovered at Eureka Springs to Oklahoma, and by their efforts brought about the arrest of the two criminals. There was nothing of

official duty involved in what they did, and they acted only as individuals. Our conclusion therefore is that there is no rule of public policy which forbids allowing them to share in the reward, nor does the case either of appellant Chambers or of Seaton, the Missouri officer, fall within the rule of public policy which excludes them from participation. Appellant was the marshal of a small town in Oklahoma, and there is no statute of that State imposing upon him the duty of arresting fugitives from other States. We have examined the statutes of that State and find none which imposes such duty. Nor is there such statute in Missouri, so far as we can discover, in the revised statutes of that State. Section 9782, of the Revised Statutes of Missouri, provides that in cities with 150,000 to 300,000 inhabitants, members of the police force "shall have power to arrest and hold without warrant, for a period of time not exceeding twenty-four hours, persons found within the city charged with having committed felonies in other States and who are reported to be fugitives from justice." We find no similar provision with reference to the police officers of smaller cities and towns, and appellee Seaton was not an officer of a city of the size to which the above quoted statute is applicable.

(6) We think that the appellant's contention with reference to the claim of appellee Seaton is unsound. It is true Seaton made the arrest upon the request communicated in the telegram from the deputy U. S. marshal in Oklahoma, and without any knowledge of the nature of the accusation against Moore, but he states that he was told by the conductor or auditor on the train that there was a reward for the man wanted, and that he made the arrest in order to secure the reward. He testified further that when appellant and the Madison County officers came there to get Moore, they told him that there was a reward. At any rate, we think that he was not acting entirely as agent of appellant in making the arrest, nor was he acting independently of appellant and the other officers. The arrest of the criminal was the

joint enterprise of the Madison County officers and appellant, and Seaton joined with them to that extent in effecting the arrest. The same may be said of the arrest made by appellant in Oklahoma. While he actually made the arrest, two of the Madison County officers were present at the time, and the other was in the town assisting in carrying out the plan of making the arrest. That, too, was a joint enterprise in which we think the efforts of all of them contributed to the results accomplished. They acted together in securing the arrest and conviction of Monroe, and the four persons who participated are entitled to share equally in the reward. After that arrest was made, they acted jointly in securing the arrest of Moore in Missouri, and Seaton acted with them, and they are entitled to share equally in that reward.

So we are of the opinion that the chancellor erred in decreeing any part of the reward to Mrs. Ogle, but in other respects he was correct in prorating the reward.

(7) It is contended by appellant that the Madison County officers were not entitled to reimbursement for their expenses in pursuing the criminals to Oklahoma, but we think that as it was a joint enterprise the individual expenses of each of the parties should be repaid out of the reward before it is divided. The court was correct in that, but erred in deducting the costs of the litigation. There was an effort on the part of the bank and the Madison County officers to exclude appellant and Seaton from participation in the reward, and there is no reason why the latter should have to pay any of the cost of the litigation. That should fall upon the parties who caused the litigation.

(8) Taking the figures of the chancellor as correct, we find that the net sum of the two rewards is $840.47. Apportioning one half of that sum to the reward for each of the criminals, appellant is entitled to one-fourth of the reward for the arrest of Monroe, making $105.06, and the sum of $84.05 as his part of the reward for the arrest of Moore. He is also entitled to judgment for $10.45, his expenses, as found by the chancellor, in se-

curing the arrest of Moore. Appellant is therefore entitled to a decree for $199.56. The decree is reversed with directions to enter a decree in favor of appellant against the First National Bank and Shuster, Berry and Vaughan for the sum indicated above, and all costs expended by him in the action. Appellant will, of course, be entitled to judgment against all of the appellees for the costs of this appeal.

It is so ordered.