EDWARD G. MAGGI, Appellant, v. W. W. CASSIDAY, Appellee, et al., Interveners.

**REWARDS: Persons Who May Receive.** County sheriffs may not lay
1  claim to rewards offered for the apprehension and conviction of
persons committing crime in their counties. The rule is otherwise
as to sheriffs, town marshals, policemen, and officers of a foreign
state who hold no warrant for the arrest of a person charged with
an offense committed outside the territorial jurisdiction of such
latter officers.

**REWARDS: Division Between Contending Claimants.** Rewards for the
2  apprehension of criminals will be equally divided between rightful
and contending claimants, each of whom contributed something to
the combination of effort which insured success.

*Appeal from Madison District Court.*—H. S. DUGAN, Judge.

FEBRUARY 8, 1921.

THE opinion sufficiently states the case.—*Reversed and remanded.*

*Leo C. Percival, J. E. Murtagh, Edwards, Longley, Ransier & Harris, W. S. Cooper, Parsons & Mills,* and *F. B. Brock,* for appellants.

*A. W. & P. R. Wilkinson, John McLennan,* and *Robbins & Bonn,* for appellees.

WEAVER, J.—One Rufus Ullery was murdered, August 26, 1915, at his store in the village of Webster, Madison County, Iowa, by some person or persons then unknown. At the coroner's inquest, the matter of offering a reward for the arrest and conviction of the perpetrators was discussed by residents of the neighborhood there assembled, with the result that then or soon thereafter one or two papers were prepared and signed by numerous persons, each pledging payment of a sum of money ''as and for a re-

1. REWARDS: persons who may receive.

ward for the apprehension and conviction of the person or persons guilty of the murder of Rufus Ullery.'' Soon after this reward was offered, the grand jury of the county returned an indictment charging George Frazier and George Clifton with the crime. Frazier, a resident of the county, was apprehended, tried, and convicted, and sent to the penitentiary. Clifton disappeared, and, although diligent search was made, his arrest was not accomplished until April, 1917, when he was taken into custody at Waterloo. On being returned to Madison County, Clifton confessed his guilt, was convicted, and confined in the penitentiary. The written subscriptions to the promised reward were, by common consent, placed in the hands of the defendant herein, W. W. Cassiday, to collect the money thereon and hold it for distribution until the persons entitled to receive it should be ascertained. Up to the time when this action was begun, Cassiday had collected and had on hand of this fund the sum of $874. Claims of right to the reward, or to some part of it, were asserted by F. B. Brock, sheriff of Madison County; D. B. Henderson, of Black Hawk County; George E. Bidwell, state agent in the employ of the state department of justice; Clarence Macomber, city marshal of Winterset, Iowa; and Edward G. Maggi, chairman of the advisory board of parole of the state of Nebraska. Cassiday, being unable to determine these rival claims, declined to pay over or distribute the reward, and Maggi brought this action to have the matter adjudicated. The defendant Cassiday brings the money into court for such disposition as may be ordered, making no claim for himself, except the sum of $150 for the services of himself and counsel, an allowance to which all other parties consented. The issues were tried as an action in equity. After hearing the evidence, the trial court found and adjudged that the petition of the plaintiff and of each and all of the interveners be dismissed, and that, subject to the allowance for himself and counsel, the defendant Cassiday be required to return said reward fund to the sub-. scribers who contributed it, each to receive such proportion thereof as the amount paid by him bears to the whole sum to be distributed. From this judgment the plaintiff and all of the interveners except Bidwell have appealed.

The circumstances and incidents relied upon by the plain-

tiff and interveners to sustain their respective claims are so
interwoven that a satisfactory settlement of their several rights
and equities is not an easy task.   We are quite satisfied, how-
ever, that the trial court's order to redistribute the fund to its
donors cannot be sustained.   The latter are not in court.   They
make no claim of right for a return of their money.   They have,
in fact, accepted the arrest and conviction of the murderers
as a performance of the conditions upon which they offered the
reward, and have in turn performed their promise by payment
of the money into court for the benefit of those who shall be
adjudged entitled to it.

It may be and, as we have said, it *is* difficult to state a plan
for apportionment of the reward which shall do even and exact
justice to all concerned.   The court's power to do this is to
some extent hampered by certain well-settled rules of law which
prevent some of the claimants, however deserving, from taking
any benefit from the offered reward; and again, there is no
certain judicial scale with which we can weigh and determine
the relative value of the services performed by those who are not
disqualified to share in the reward, and who by their efforts
furnished material aid in bringing the criminals to justice.   We
can, perhaps, best simplify the situation by a process of elimi-
nation.   Of the five persons who claimed the right to receive the
reward, or to share in it, the intervener Bidwell has not ap-
pealed, and we may, therefore, dismiss the issue raised by him
from our consideration.   The appellant Brock was the sheriff
of Madison County, and as such officer was charged with the
duty to arrest the accused persons and do all within his power
to bring them to justice.   For all service so rendered by him and
all expense properly so incurred by him the law provides that
he shall receive compensation from the county.   He concedes
that he has, in fact, rendered to the county his bill for fees so
earned, and that they have been paid.   Our statute, Code Sec-
tion 4885, makes it unlawful for any officer to accept or receive
any gratuity or thing of value for the performance of any of-
ficial duty.   It is also a general rule of law, irrespective of
statute, that a public officer cannot earn a reward for making
an arrest which it is his duty to make.   See *Somerset Bank v.
Edmund,* 76 Ohio St. 396; *Means v. Hendershott & Burton,* 24

Iowa 78. Obedience to this rule compels us to hold that Mr. Brock, as sheriff of the county, is disqualified to share in this reward.

The intervener Henderson was sheriff of Black Hawk County, and made the actual arrest of Clifton, under the following circumstances. Clifton had been an inmate of the Nebraska penitentiary, but had been released on parole. Plaintiff, Maggi, was chairman of the Nebraska board of parole. The latter, having heard through some source that Clifton was charged with murder in Iowa, and that a reward was offered for his apprehension, instituted inquiry and search for the fugitive. He acquired possession of a letter from Clifton to an acquaintance, asking to have a certain suit case sent to his address at the Y. M. C. A. building in Waterloo. Maggi himself took the suit case to Waterloo, and lay in wait there for Clifton to appear. After waiting a few days, it became necessary for him to return to Nebraska, and he called Sheriff Brock to Waterloo, gave him the clue he had secured, and asked him to wait there for Clifton to show up. Brock stayed a short time, when his business called him home; but, before leaving, he interviewed Henderson, and placed the matter in his hands. Very soon after Brock departed, Clifton appeared in Waterloo. Henderson made the arrest and telegraphed the news to Brock, who returned and took possession of the prisoner. Before Brock had reached Waterloo on this trip, Henderson had secured from Clifton a written confession of his guilt, which he delivered to Brock.

We have, then, to inquire whether Henderson, as sheriff of Black Hawk County, labors under the same disqualification with reference to the reward which we have held applicable to Sheriff Brock, of Madison County. While these men were both sheriffs, their relations to the prosecution and conviction of Frazier and Clifton for the murder of Ullery were materially unlike. Brock was sheriff of the county where the crime was committed, and where the accused were indicted, tried, and convicted. It was his official duty, by himself or deputies, to execute and return all writs, warrants, and other legal process issued by lawful authority and to him directed. Code Section 499. As such officer, he receives, serves, and executes all warrants, writs, and other

process issued by the courts of record in his county. Primarily, the jurisdiction within which the sheriff's official acts and duties are to be performed is the county of which he is an officer. Generally speaking, his authority to act officially either within or without his county is measured by the writ, warrant, or process with which he is armed, though within his county he is by statute authorized to act without warrant under certain conditions, as, for example, the preservation of the peace, or the arrest of a person committing a public offense in his presence, or where a public offense has, in fact, been committed, and he has reasonable ground for believing that the person to be arrested has committed it. Code Section 5196. Being armed with a warrant for the apprehension of a person charged with a grave crime, his duty is not limited to making the arrest at his convenience, but he is to act promptly and vigilantly, and, "in so far as it is within his power, to secure evidence of all crimes committed within his county, and present the same to the county attorney and the grand jury." Code Supplement, 1913, Section 499. But the sheriff of a county other than the one in which a crime is alleged to have been committed, who holds no warrant, writ, or process which requires him to apprehend a person charged with such crime in another jurisdiction, is under no official obligation to arrest or detain the suspect. Now the reason for the rule by which we have held Sheriff Brock disqualified to receive or share in the reward is that it is manifestly contrary to sound public policy to permit a public officer to demand or receive a gratuity or reward for making an arrest which it is his duty to make. To hold otherwise would be to open the door to fraud and corruption. If, however, the claimant is not charged with any official duty to make such arrest, the reason for the rule does not exist, and there is no call for its application.

The intervener Henderson held no warrant for the arrest of Clifton. He was under no official obligation to join in his pursuit or capture. Neither Black Hawk County nor Madison County was chargeable with fees or compensation for such volunteer service, and, if he was influenced to action by the offered reward, he wronged no one and neglected no duty he was otherwise bound to perform.

This question, in various forms and under various circum-

stances, has had the consideration of the courts, and has given rise to some conflict of opinion; but the trend of judicial opinion is quite in accord with the view that a reward for the arrest or arrest and conviction of an alleged criminal may be earned and properly received by an officer who is under no official duty to do the act without such reward. *Davis v. Munson*, 43 Vt. 676 (5 Am. Rep. 315); *Russell v. Stewart*, 44 Vt. 170; *Bronnenberg v. Coburn*, 110 Ind. 169 (11 N. E. 29); *Kinn v. First Nat. Bank*, 118 Wis. 537 (95 N. W. 969); *Forsythe v. Murnane*, 113 Minn. 181 (129 N. W. 134); *Smith v. Vernon County*, 188 Mo. 501; *Marsh v. Wells Fargo Exp. Co.*, 88 Kan. 538; *Morris v. Kasling* 79 Tex. 141; *Harris v. More*, 70 Cal. 502; *Union Pacific R. Co. v. Belek*, 211 Fed. 699; *Chambers v. Ogle*, 117 Ark. 242; *Bystrom v. Rohlen*, 134 Minn. 67; *Gregg v. Pierce*, 53 Barb. (N. Y.) 387.

We therefore hold that the record discloses no such duty on part of the intervener Henderson as will preclude him from sharing in the reward.

The same conclusion is quite inevitable in the case made by the intervention of Macomber. We find no precedent for denying the right of a town marshal or local policeman or constable to compete for a reward for making an arrest of one for whom he holds no warrant, where the scene of the crime and of the arrest are both outside of the officer's territorial jurisdiction.

Coming now to the claim asserted by the plaintiff Maggi, it appears without dispute that he is a nonresident of the state, and was under no official duty or obligation to undertake the apprehension of the murderers of Ullery. Presumably, he was actuated by the desire to earn the offered reward. That he did render material aid in discovering and capturing Clifton is well established; but neither he nor either of the interveners can arrogate to himself the entire credit for the apprehension and conviction of the criminals. It must be remembered that the reward was not offered for the arrest or conviction of Clifton alone, but for the "murderer or murderers" of Ullery. The capture and conviction of Frazier was part of the consideration for the reward, no less than the capture and conviction of Clifton. As we understand the record, neither Maggi nor Henderson had any part whatever in Frazier's arrest or conviction. The actual arrest

2. REWARDS: division between contending claimants.

of Clifton was made, as we have seen, by Henderson, by whom also the incriminating confession was procured; but Maggi is to be credited with having an important part in tracing Clifton, and devising the plan by which he was brought within reach of his pursuers. The record is not at all clear concerning the details of the arrest and trial of Frazier or of the search for Clifton during the next year and a half, until Maggi picked up the clue which finally led to the arrest at Waterloo. It is fair, however, to presume that Sheriff Brock was not neglecting his official duty in this respect, and there is evidence tending to show that both Macomber and Bidwell took a more or less active hand in tracing the connection between Clifton and Frazier, and in developing an increasing certainty of the criminal association of these men and their probable guilt. The successful result of the quest and the apprehension and conviction of the desperate criminals are not the accomplishment of any one of the contestants for the reward. Each contributed something to the combination of effort which insured success. We cannot say or determine to whom the greater credit belongs, but we can say that together they have accomplished the thing for which the reward was promised. The situation thus presented is one in which "equality is equity," and we find that the decree entered by the trial court should be reversed, and that the remnant of the reward, after deducting the agreed allowance of $150 in favor of the defendant and his counsel, should be paid in equal shares to the plaintiff, Edward G. Maggi, the intervener Clarence Macomber, and intervener D. B. Henderson. The cause will, therefore, be remanded to the trial court, with directions to enter a decree in harmony with this finding, and to make an equitable taxation of the costs.—*Reversed and remanded.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.