No. 27,963.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONT-GOMERY, *Plaintiff*, v. W. F. JOHNSON, *Appellant* and *Cross Appellee;* H. H. HAMILTON, E. O. CRABAUGH and ROY HOPKINS, *Appellees* and *Cross Appellants.*

(266 Pac. 749.)

Opinion filed May 5, 1928.

*Ben W. Berg,* of Independence, for the appellant.

*William H. Thompson* and *Wilbert F. Thompson,* both of Tulsa, Okla., for the appellees and cross appellants.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to determine who of four claimants was entitled to a reward for the capture and conviction of one Everett Bible. The court, to whom the case was tried, found that each of the claimants was entitled to one-fourth of the entire reward. Johnson appeals, contending that he is entitled to the entire reward, and the other defendants appeal, contending the reward should have been allowed, one-third to each of them.

The facts are well stated in the court's findings to the effect that:

"On July 4, 1926, Everett Bible killed Charles Faurot near Tyro, Kan., and fled the state a fugitive from justice. On November 10, 1926, W. F. Johnson was running a lunch stand on Peoria street, in the north part of Tulsa, Okla. At that time defendants Crabaugh and Hamilton were constables in that district and Hopkins was a special deputy sheriff, a nonpay officer, without giving bond and serving without salary. Everett Bible on last date named with companion drove up to Johnson's place, purchased lunch, drove away without paying for same. Whereupon Johnson armed himself and gave chase, overtaking Bible, when a conversation ensued, Bible shooting at Johnson who returned the shots, and afterwards both parties clinched, scuffled and fell to

the ground. Bible's gun having locked had been thrown away and both parties were then hold of and grappling for Johnson's gun, when the other defendants, Hopkins, Crabaugh and Hamilton drove up. Bible was partly on top and trying to bend the gun around so that when it was discharged it would shoot Johnson. They were separated by the three officers and taken into custody. That had it not been for Johnson Bible would not have been intercepted by the officers, and had it not been for the timely assistance of the officers Bible would probably have killed Johnson or done him great bodily injury and escaped. There is no law prescribing fees or salary for a special deputy sheriff in the state of Oklahoma, and there is no law in the state of Oklahoma making it the duty of such special deputy or of constables to arrest a person who is a fugitive from justice from another state. On November 8 Montgomery county had offered a reward of $300 and the state of Kansas for $200 for the arrest of Everett Bible for the killing of Charles Faurot, and both state and county have paid said sums into court to abide the decision of this case."

The court concluded:

"That each of the above-named defendants, W. F. Johnson, H. H. Hamilton, E. O. Crabaugh and Roy Hopkins, are entitled to one-fourth of said reward after the costs of this action have been first paid."

The defendant Johnson contends that he was the primary, proximate and sole cause of Bible's apprehension; that he knowingly tackled Bible with the intention of turning him over to the authorities, and that the formal placing of Bible under arrest by the other defendants who were officers was not such an act as would entitle them to share in the reward.

There was an abundance of evidence to sustain the court's finding that "if it had not been for the timely assistance of the officers Bible would probably have killed Johnson or done him great bodily injury and escaped." On the other hand, it appears clearly that if Johnson had not intercepted Bible the latter, in all human probability, would not have been arrested by the other defendants, and none of them would have been in position to claim the reward. Johnson argues that Bible was not arrested on the ground that he was a fugitive from justice, but because he had violated the law of Oklahoma; that when they took Bible into custody they did not know he was a fugitive from Kansas. It is also argued that the other defendants were not entitled to the reward because it is against public policy for a constable or other peace officer acting within his jurisdiction and within the authority conferred on him by law to receive rewards other than the compensation allowed by law for making the arrest. It appears, however, that there is no law in

Oklahoma requiring a constable or special deputy sheriff to arrest a fugitive from justice from another state or for a crime committed in another state. Ordinarily to preclude the officer from the reward it should appear that he acted in his official capacity and that the service for which the reward was claimed was part of his official duty. In *Williamson v. Labette County Comm'rs*, 122 Kan. 349, 252 Pac. 466, where the officers were held not to be entitled to the reward, it was said in the opinion: "It has been held that where an officer is under no obligation to discover and arrest the perpetrator of a crime, arising from his official character, the policy of the law does not preclude him from recovering a reward." (p. 351, citing authorities.) In *Marsh v. Express Co.*, 88 Kan. 538, 129 Pac. 168, it was said:

"Where a suspected felon is arrested without a warrant by a deputy sheriff of a county other than the one wherein the arrest is made, he is not debarred from recovering a reward therefor merely because he is such officer. . . . (Syl.)

"On the other hand, no rule of public policy forbids such recovery where the officer is under no obligation arising from his official character to perform the service." (p. 541.)

"Evidence that a person was a 'special and nonpay' deputy sheriff implies that his activities in that regard were limited to performing acts specifically directed, and that he was under no obligation to devote time to investigating criminal offenses.

"Such a deputy sheriff is not precluded by his office from claiming a reward offered for the arrest and conviction of an offender where by his own efforts he has discovered by whom a crime was committed and by what evidence this can be proved." (*Elkins v. Wyandotte County*, 91 Kan. 518, syl. ¶¶ 1, 2, 138 Pac. 578.)

See, also, *Smith v. Fenner*, 102 Kan. 830, 172 Pac. 514; *Forsythe v. Murnane*, 113 Minn. 181, 129 N. W. 134; *Burkee v. Matson*, 114 Minn. 233, 130 N. W. 1025, 34 L. R. A., n. s., 924; *Kasling v. Morris*, 71 Tex. 584, 9 S. W. 739, 10 Am. St. Rep. 797; *Morris v. Kastling*, 79 Tex. 141, 15 S. W. 226, 11 L. R. A. 398.

We are of the opinion there was ample evidence to sustain the court's findings and that the court arrived at a proper conclusion.

The judgment is affirmed.